HENRY J. SEAMAN v. WILLIAM RIGGINS and JOHN MOIR.

No exercise of the power of the court can be plainer, than that of controlling sales by public officers, on its own process.

The practice of the English chancery, of opening sales upon an offer made to bid more for the property, without any allegation of surprise or fraud, has not been adopted in this state.

To justify the interference of the court, there must be fraud, mistake, or some accident, by which the rights of parties have been affected.

Sale set aside when the agent of an incumbrancer, whose interests were prejudiced by the sale, and who intended to purchase, was prevented from attending the sale by accident and by an unintentional mistake of the complainant's solicitor.

The discretion vested by law in the sheriff is a legal discretion, and the court will not permit such an exercise of it as shall work injustice and wrong.

THIS case came before the court upon the petition of John Moir, one of the defendants, to avoid a sale made by the sheriff of Middlesex, by virtue of the execution issued in the cause, for the sale of mortgaged premises. The petition was filed on the 20th of March, 1839. Before the filing of the petition, on the 19th of February, 1839, upon filing an affidavit of the agent of the petitioner, an order was made by the chancellor, whereby it was ordered, that the sheriff of the county of Middlesex should desist and refrain from executing or delivering any deed for the mortgaged premises, under or by virtue of the sale made by him, until the further order of the court respecting the same. The material facts contained in the petition are fully stated in the opinion of the chancellor. The cause came on for hearing upon the petition and affidavits.

*A. Whitehead* and *Vanarsdale*, for petitioner.

*Williamson* and *Speer*, contra.

THE CHANCELLOR. This is an application by John Moir, a defendant, to set aside a sale made under the execution issued

[Seaman v. Riggins and Moir.]

in this cause, on the eighteenth of February last, by the sheriff of the county of Middlesex. By the execution, the sheriff was directed to sell the mortgaged premises, and to satisfy out of the proceeds, *first*, four thousand three hundred and fifty dollars due the complainant on his mortgage, with interest and costs; and *second*, to satisfy John Moir, a defendant, three thousand and forty-five dollars and forty-five cents, the amount of a second mortgage, with interest and costs. The property was owned by William Riggins, the other defendant, and the amount of these two mortgages was to be raised by the sale. It is admitted by all the witnesses, by Mr. Travers, by the sheriff, and by the solicitors for both the parties, that the property is worth the amount to be raised by the execution, as well that due to Mr. Moir as that due the complainant. The sale was first advertised for the fourth of February, at South-Amboy, and was then adjourned to Applegate's tavern, at the mouth of Cheesequakes creek, between two and three miles south of South-Amboy. Mr. Moir constituted his solicitor his agent to attend the sale, and authorized him to bid up the property to the amount due the complainant and himself. On the first day fixed for the sale, Mr. Moir's agent did not attend, having the promise of the complainant's solicitor that no sale should take place in his absence; and though a sale was then pressed, it was postponed by the firmness of the complainant's solicitor, who had given his word that none should take place in the absence of Mr. Whitehead, the agent of Mr. Moir. The complainant's solicitor, after the first day of sale, wrote Mr. Whitehead that the sale was adjourned to the eighteenth day of February, at one o'clock, at the house of Mr. Appleby, about a mile or a mile and a half from the ferry at South-Amboy. On the day of sale, Mr. Whitehead, being under the impression, from inquiries made, that the place of sale was between South-Amboy and New-Brunswick, and having further learned that the steamboat from New-York to South-Amboy did not stop at Elizabeth-Town Point, took the train of cars that pass through Newark about a quarter before ten in the morning, for New-Brunswick, and from thence set out in a pri-

vate conveyance to attend the sale. After pursuing his journey and making inquiries on the road, he came to a tavern-house belonging to a Mr. Appleby, though not occupied by him, between New-Brunswick and South-Amboy. When he arrived there, he found out by a person who happened to have been present at the time of the adjournment of the sale, that the place of sale was at William Applegate's tavern, on the other side of South-Amboy, and that he had gone out of his way some five or six miles. He then went on, and arrived at the place of sale at five minutes before two o'clock, and found that the property had been sold to Mr. John Travers, for and in behalf of William Riggins, the defendant, for four thousand five hundred dollars, a sum about sufficient to satisfy the complainant's mortgage, and cutting off entirely the defendant, John Moir. The sale was fixed for one o'clock, and the property struck off without any other bidder than Mr. Travers, at about half past one. Under this state of facts, John Moir applies by petition to set aside this sale, offering on his part to bid upon a resale the full amount due him and the complainant also. Burnet, the mortgagor in the mortgage of Mr. Moir, is stated to be insolvent; and unless the relief here asked is granted, the money on this second mortgage must be entirely lost. No deed has yet been executed by the sheriff to the purchaser.

The power of the court to interfere in this case is not denied. It has been frequently done in the state of New-York, and in this court. No exercise of the power of the court can be plainer, than that of controlling sales by public officers on its own process. *Williamson* v. *Dale*, 3 *John. Ch. Rep.* 290; *Duncan and others* v. *Dodd and others*, 2 *Paige*, 99; *Requa* v. *Rea and wife*, *Ibid*, 339.

In this court, the case of *the Ex'rs of Gouverneur Morris* v. *Swartwout and others*, was cited at the bar, though not reported. The cases referred to on the argument from the English courts, on the subject of the opening of biddings, though not applicable to our method of making sales, show a very strong disposition to open sales upon the single ground that more can be

got for the property. They open the biddings continually, upon an offer made to bid more for the property, without any allegation of surprize or fraud. Holding a power over the subject, they do so for the interest of the estate alone. These cases do not apply to sales made with us; they have never been adopted either in the state of New-York or in this state. To justify the interference of the court, there must be a foundation laid—either fraud or mistake or some accident, by which the rights of parties have been affected.

In the present case, I have no doubt either as to the power of the court, or its plain duty, to interpose and set aside this sale. The bare statement of the facts show, that an accident on the part of the agent in missing the road, and a mistake wholly unintentional in the complainant's solicitor in naming the house at which the sale was to take place, have occasioned the whole difficulty; and it would be a reproach on the administration of justice if no remedy could be afforded. Had Mr. Moir, or his agent, neglected his business, there might have been some reason against interfering; but they both have shown diligence, and certainly did intend to be present and to bid, and would have done so but for the accidental occurrences which have been stated. I consider the misapprehension under which the agent labored, and honestly so no doubt, as to the situation of the place where the sale was to take place, and the wrong information given him by the complainant's solicitor, as a sufficient ground for interference. Moir was not a mere stranger, who contemplated attending the sale as a purchaser, but a party having a deep interest, and manifesting in all his conduct a determination to be present, and to bid the amount due him. The property was worth the amount, and his mortgagor was insolvent, he had therefore every motive for such a course.

But it is said that it is dangerous to interfere with sheriffs' sales; that they have a right, as public officers, to exercise a discretion as to sales, and the manner of conducting them; and that, if the court will set aside such sales, purchasers will not attend. A sheriff is a public officer, and as such has a certain discretion

entrusted to him by law, and with that it is not my intention or desire to interfere; that discretion must, however, be a legal one, and the court will not permit such an exercise of it as shall work injustice and wrong. Thus far my opinion is formed from reasons wholly independent of the sheriff; and without intending now to charge on that officer in this case a designed fraud, I can never be led to think his conduct in respect to this execution was right. It may have been, and I incline to think it was, more the result of indiscretion than design. He had a large execution in his hands; he knew that the sale, made as it was, would cut off entirely the second mortgage, amounting to more than three thousand dollars; he knew that it was the intention of the person holding this second mortgage to be represented at the sale; and he knew the property to be worth the amount of both the mortgages. Under such circumstances, his plain duty was, either to adjourn the sale, or to have waited until a later hour. In the absence of this party, to strike off the property in half an hour, when he had until five o'clock, more than three hours, at his disposal, was unnecessary and unreasonable haste.

As to the course pursued by Mr. Travers, it is very clear his interest and that of Mr. Riggins, the purchaser, was one in this transaction. Mr. Riggins was his relative, and probably has acted throughout with a view to befriend Mr. Travers, which he had a perfect right to do. One thing is certain; Mr. Travers meant to get this property at as cheap a rate as possible, and availed himself of the opportunity which he considered presented itself of defeating this second mortgage. At the first day fixed for the sale, after learning that a sale for the amount of the first mortgage would defeat the second entirely, he still pressed the sale of the property, which must then have taken place but for the commendable course pursued by Mr. Williamson. He may have excused this course to himself upon the ground that considerable improvements had been put on this property by himself and Mr. Riggins, and that without such improvements the property would not have been worth the amount of this second mortgage. This consideration, it cannot be pretended, should

[Seaman v. Riggins and Moir.]

enter into this question. Any improvements thus made, can never be set up as a reason for defeating a bona fide mortgage.

The place, too, for the sale, was fixed by Mr. Travers—a place every way unfit for such a sale, and only to be excused for the reason that it was near the premises to be sold.

The sale made by the sheriff must be set aside, and a new sale made, upon a readvertisement according to law. Each party to pay their own costs on this application.

Sale set aside.