ALICE C. STRONG et al.

*v.*

BERNARD SMITH et al.

[Submitted January 6th, 1905.   Decided February 10th, 1905.]

After decree of foreclosure of a first mortgage, a rule to show cause why the decree should not be opened to permit a defence was allowed, and the sale restrained until disposition of the rule.   The sale was adjourned by weekly adjournments not advertised, and the rule discharged on the day preceding the last adjourned day.   The holders of the third and fourth mortgages had relied on their broker to inform them of the day of sale, and when the broker heard, on the morning of the day of sale, that the sale would take place that afternoon, he went to the city where the sale was to take place and endeavored to secure another adjournment, but was unable to do so, and was unable to obtain an agreement from the agent of complainant in foreclosure for a less percentage than that required from a purchaser, he not having a sufficient amount with him to pay the required percentage.   The property was sold for a sum insufficient to produce anything for the third and fourth mortgages, and the mortgagees therein petitioned for a resale, filing affidavits showing that, on a resale, responsible parties would attend and bid $82,000, an amount sufficient to satisfy the mortgage investments.—*Held*, that under the facts a resale would be ordered, on condition that the petitioners give bond conditioned that a responsible purchaser would attend and bid at least $82,000, and pay the amount of the bid in case of a purchase by him, and in case of default, to pay the first and second mortgages, with all expenses.

On appeal of Abraham Sartorious et al. from an order of the court of chancery, advised by Vice-Chancellor Bergen, who filed the following opinion:

Application is made to have set aside a sale of lands in the county of Monmouth, in this state, made by the sheriff of that county on the 13th day of May last, under an execution issued out of this court, as the result of proceedings to foreclose a mortgage.

The undisputed facts are as follows:   Albert G. Spaulding, being the owner of the premises on June 12th, 1900, mortgaged

the same to secure the payment of $50,000 to the complainant; that Spaulding conveyed the same to Bernard Smith, April 14th, 1901, subject to this mortgage, and accepted from Smith as part payment a second mortgage on the lands for $29,000 ; that Smith subsequently, and in August, 1902, mortgaged the lands to Abraham Sartorious to secure the payment of $4,500, and on February 19th, 1903, further encumbered the land by giving a mortgage to one Henry B. Smith to secure the payment of $6,000, making a total mortgage indebtedness for principal of $89,500; that the complainant caused her mortgage to be foreclosed in this court, and a final decree in her favor was duly made, fixing the amount due her and decreeing the issuing of a *fieri facias* for the sale of the lands to be directed to the sheriff in the county of Monmouth, by virtue of which the lands were sold on May 13th last to Albert G. Spaulding for $70,150, that being the sum due on the first and second mortgages held by the complainant and the purchaser, respectively, the sale producing nothing for the third and fourth mortgagees.

The question we are now asked to consider arises over the application of Mr. Sartorious and Henry B. Smith—the latter not being a relative of the owner of the equity of redemption—to have this sale set aside, and in support of which they have presented to the court their petition, duly verified, from which it appears that after the final decree in the foreclosure proceedings had been made, and the property advertised for sale, the owner of the equity of redemption applied to this court for and was allowed a rule to show cause why the decree should not be opened and he be permitted to set up a defence to the foreclosure proceedings; this rule also restrained the sheriff from selling as advertised until the disposition of the rule. The rule was allowed on April 25th, 1904, and was discharged during the afternoon of May 12th following, the sheriff having in the meantime adjourned the sale, by weekly adjournments, not advertised, the last adjourned day falling on May 13th, on the morning of which, and about ten o'clock in the forenoon, the sheriff's deputy was served with a copy of the order discharging the rule; that the loans made by both petitioners to Bernard Smith were nego-

tiated by David Lamar, a brother-in-law of Bernard Smith, who informed them, after the allowance of the rule staying the sale, that the date of the sale was uncertain, but that he would inform them of the day of sale—if the sale should be ordered—in ample time for them to attend the sale; and that they were not so informed, and knew nothing of the sale until after it had been made, nor were either of them aware that the stay had been vacated.

The testimony of the sheriff and his deputy shows that on the morning of May 13th, Lamar, who represented the petitioners, was notified by the deputy over the telephone that the sale would take place that afternoon; that Lamar then, being in New York City, complained of the short notice, and asked for an adjournment; that the deputy intimated that perhaps the sheriff would allow it, but he must attend and make the application in person; that Lamar went to Red Bank, the place of sale, and made his application, and was told by the sheriff that there was some misunderstanding, as he at first thought that one of the adjournments prior to the rule and stay had been on the application of the complainant, but he had since been convinced that it was not so, and that both of the prior adjournments had been made by him as sheriff, and consequently his discretion was exhausted, and he could not adjourn the sale without consent of the complainant. Whereupon they went to the office of the complainant's solicitor and met Mr. Blackwell, the New York counsel of the complainant, and Mr. Cox, the agent or representative of Mr. Spaulding; that the application to them was fruitless, they demanding that the sheriff should sell; that Lamar then asked that the percentage required from a purchaser should be reduced from twenty per cent. to eight or nine per cent., as that was all the money he had with him; this request was also refused, Mr. Cox saying it ought to be all cash. The sheriff further testified that although the terms of the sale required the payment of twenty per cent., it was not exacted from Mr. Spaulding because previous to the sale there was an agreement made with Mr. Cox by the counsel of the complainant that, if he bought, no deposit would be required. It seems to me that this uncontradicted

state of facts discloses a situation which justifies affording the petitioners an opportunity to protect their claims.

This sale had been stayed by an order of this court. The precise day the questions raised might be disposed of could not be known with any certainty, and holders of encumbrances desiring to protect their interests could hardly be expected to attend at Red Bank to listen to a weekly adjournment, and they were justified in relying upon the promise of Mr. Lamar to give them reasonable notice. The rule happened to be discharged on the day before the time to which the sale had been last adjourned, and to force the sale so soon after the removal of the stay was, in a sense, oppressive.

The control of the court over the use of its process ought to be liberally exercised to prevent a wrong; in this case the sale is not to an indifferent party, but to a prior encumbrancer, who can suffer no injury if protected in the payment of his debt, and the controlling of judicial sales to bring about equitable results has long been the practice of the courts of this state. In *Campbell* v. *Gardner, 11 N. J. Eq. (3 Stock.) 423,* it was held that whenever an injury was done to a person by a judicial sale, it would be set aside upon showing that he had been prevented from attending the sale by fraud, mistake or accident.

Chancellor Williamson, in his opinion in this case, said: "I think where the mortgagee is the purchaser, and the party applying to open the sale offers to pay all the money due upon the security, and there has been really a mistake upon the part of the owner of the equity of redemption, owing to which the property has been sacrificed, the court ought to regard an application for resale with more indulgence than when a stranger is the purchaser." It does not appear in this case, in my judgment, that the property was sold for a price so inadequate as, standing alone, to warrant an order for resale; but in all cases of this kind the court is bound to consider the special circumstances arising in each, and as between these parties, it seems to me the property has been sacrificed, so far as concerns the interests of the third and fourth mortgagees, and if they are willing to insure a purchaser who will bid a sufficient sum to indemnify the first

and second mortgagees against loss, an equitable disposition of this application requires that they should have such an opportunity. This doctrine is sustained in *Mutual Life Insurance Co.* v. *Goddard, 33 N. J. Eq. (6 Stew.) 482; Rowan* v. *Congdon, 53 N. J. Eq. (8 Dick.) 385.*

The petitioners submit affidavits showing that persons, who establish their financial responsibility under oath, will attend a resale of this land, should one be directed, and bid a much larger sum than is required to protect the petitioners' debts. The Atlantic Realty Company, whose president swears that it is a large real estate owner in this state, agrees to attend and bid at least the sum of $82,000, and to comply with the terms of sale if the successful bidder.

Mr. Samuel V. Abel, who testifies that he is the owner of real estate in the city of New York having a market value in excess of $700,000, agrees to attend and bid $82,000 for this property. Under these circumstances I feel disposed to give these petitioners an opportunity to save their investments, and if they shall, within fifteen days after the filing of these conclusions, enter into a bond to the complainant and Mr. Spaulding, with surety, to be approved by this court or under its direction, in the sum of $82,000, conditioned that in the event of a resale a responsible purchaser will attend and bid at least the sum of $82,000 for said lands, and pay the amount of his bid if the property shall be struck off to him, and, if default be made, will pay whatever may be due to the complainant and Albert G. Spaulding, on their respective mortgages, for debt, interest, costs, sheriff's fees, and all other expenses of making the sales, then I will advise an order setting aside the present sale. But if such bond be not executed and delivered within the time mentioned, then I will advise an order refusing the prayer of the petition, with costs.

*Mr. Alan H. Strong* and *Mr. John R. Hardin,* for the appellants.

*Mr. Frederick W. Hope* and *Mr. Edmund Wilson,* for the respondents.

PER CURIAM.

The order of the court of chancery is affirmed, for the reasons stated in the opinion of Vice-Chancellor Bergen in the court of chancery.

*For affirmance*—THE CHIEF-JUSTICE, DIXON, GARRISON, GARRETSON, PITNEY, SWAYZE, BOGERT, VREDENBURGH, VROOM, GREEN, GRAY—11.

*For reversal*—None.