On petition to annul a sale in a foreclosure suit.
The petitioner is the wife of the owner of the equity of redemption of real estate upon which the mortgage foreclosed was a lien, and she is living apart from her husband from whom she has been estranged for some time. She entered into a contract with one Nettie Murray, who held a second mortgage upon the same property, to convey the equity of redemption for the sum of $10,500. Her husband refused to join in the contract because he maintained that the price was inadequate. Subsequently, the husband and wife executed a contract with Mr. Sidney Jacobs, a member of the bar, on *Page 549 
November 11th, 1924, to convey their interest in the land, for the consideration of $11,250, and received $500 thereof. The petitioner's husband had entered into recognizances, which were liens on the land, and, therefore, the passing of title was postponed from time to time, during which the bill to foreclose the first mortgage was prosecuted to final decree and execution issued thereunder. The sheriff advertised the sale for April 30th, which was, approximately, one week before the time fixed for the trial of the indictment against the defendants, in whose interest the above-mentioned recognizances had been executed. Before, or about the time the sheriff held his sale, Mr. Jacobs repudiated his contract and commenced an action at law for the purpose of recovering back his deposit. No matter what his legal ground may have been, the motive which prompted him to reject the title, as expressed by himself, was that the property did not equal in value the price he had agreed to pay.
The application is based upon inadequacy of consideration at the sheriff's sale coupled with mistake upon the part of the solicitors representing the husband of the petitioner. So far as the inadequacy of price is concerned, the petitioner maintains that the property is worth $11,250, while the price realized at the sale held by the sheriff was only $8,000. There is no such shocking contrast here as should result in setting the sale aside. The figures bear a striking resemblance to the ratio inHoffman v. Godfrey, 79 N.J. Eq. 617, where the court of errors and appeals said that, in the absence of fraud, irregularity, accident or mistake, judicial sales will not be set aside for inadequacy of price, unless the inadequacy is so gross as to justify an inference of fraud. There is no proof of irregularity, accident or fraud, and, therefore, it becomes necessary to examine those facts upon which equitable mistake is predicated.
Prior to the time of the execution sale, counsel representing the petitioner, as well as other counsel acting for her husband, called upon the sheriff seeking an adjournment of the impending sale, and were told by that officer that such a motion would have to be made at the time the sale was *Page 550 
scheduled to be held. It was agreed between them that one or the other should be present at that time and make the formal application for an adjournment. On the day of the sale one of them, finding that it would be impracticable for him to make the motion, telephoned to the office of the other, where he left a message that the other "should attend to the sale personally." The person who took the message is said to have made the mistake upon which the petitioner relies. As transmitted, the message was that an adjournment had been secured, and that it would not be necessary to attend at the sheriff's office. Later in the day the sale was held, with the result already stated.
I am not unmindful of the rule laid down in Campbell v.Gardner, 11 N.J. Eq. 423, that where the foreclosing mortgagee is the purchaser the court will more readily open the sale than in the case of a stranger so purchasing. But while the petitioner alleges that the purchaser had formerly represented to her that she could control the foreclosure of the first mortgage, the purchaser much more stoutly swears that this allegation is untrue, and the purchaser here, while an encumbrancer, was not the mortgagee at whose suit the land was ordered to be sold. But even assuming, for the purpose of argument, that the rule laid down in Hoffman v. Godfrey, supra, should be somewhat relaxed, I do not think that it should be entirely swept away for the purpose of permitting the petitioner to take advantage of the kind of a mistake that was made in this case.
There can be no doubt that courts have gone to great lengths in applying the doctrine of mistake. But they have always recognized that negligence upon the part of him by whom it is invoked will defeat its application, and this is so whether the fault lie at the door of the party himself or his representative. Bish. Pr.Eq. § 191. Pom. Eq. Jur. § 858 says that a party's own negligence will not always occasion refusal of relief, and then states the rule in the following language:
"It would be more accurate to say that where the mistake is wholly caused by the want of that care and diligence in the transaction which *Page 551 
should be used by every person of reasonable prudence, and the absence of which would be a violation of legal duty, a court of equity will not interpose its relief; but even with this more guarded mode of statement, each instance of negligence must depend to a great extent upon its own circumstances."
In Voorhis v. Murphy, 26 N.J. Eq. 434, which was a foreclosure suit, the defendant undertook to excuse delinquency in the payment of an installment of interest by saying that he mistakenly thought the period of grace was longer than, in fact, it was. The chancellor said: "Such carelessness will not be regarded in equity as mistake." To the same effect are the authorities which he cites. In a great many cases the complaining party has been relieved of the consequences of his mistake of fact, even where it was due to his own clear negligence. An example is to be found in Institute Building and Loan Asso. v.Edwards, 81 N.J. Eq. 359. There the complainant, holding a mortgage admittedly superior to two subsequent judgments, canceled the same and took a new one on the same land and to secure the same debt which was, on its face, a subsequent lien to those of the judgments. The doctrine of subrogation was applied because, as Vice-Chancellor Leaming points out, no one was injured by the complainant's mistake except itself. But he says (at p. 365):
"Where the act done by mistake is one calculated to induce others to take a line of conduct which will put them to loss if the mistake is corrected, it ought to be clear that the party asking for relief has been led into the mistake in spite of the employment of the highest degree of vigilance."
Applying this language to the case at bar, the petitioner has, by her conduct in failing to adjourn the sale and produce a purchaser who would bid more, very materially changed the position of Nettie Murray. She has now obligated herself to take over the property and pay the amount of her bid to the sheriff, and is entitled to the fruit of her vigilance.
Besides, a moment's consideration will make it apparent that the petitioner seeks to speculate at the sale she hopes will be ordered. At the time the property was sold by the sheriff she did not have anyone who would have bid more than *Page 552 
Nettie Murray did, because, although she did not know it, Mr. Jacobs must have then made up his mind that he would not complete his contract. Neither is there any assurance that a more favorable bid will be made at another sale. And in this state of affairs the court is asked to keep a creditor or creditors out of his or their just due in the Micawber-like hope that "something will turn up." The chancellor will publish in a very short time an opinion in Cashin v. Alamac Hotel Co., in which he will animadvert upon the gravity of interfering with such a sale except upon the strongest provocation.
I do not think that this petitioner comes within any of the authorities upon which her counsel rely. For example, in Howell
v. Hester, 4 N.J. Eq. 266, the petitioner was so advanced in life and so helpless that the chancellor said he was inclined to regard the application "with indulgence," because her negligence was not culpable on account of the facts just mentioned. In addition to that, the property did not realize twenty-five per cent. of its value, and, in analogy to Chancellor Walker's opinion in In re New Jersey Refrigerating Co., 96 N.J. Eq. 431,
where he determined that a sale should be set aside where there was an opportunity to secure fifty-two per cent. increase, I think that if it were shown that three hundred per cent. increase could be obtained in the case at bar, I would feel as the chancellor did in Howell v. Hester. In Seamen v. Riggins,2 N.J. Eq. 214, the attack upon the sale was based, in part, upon the prior representation of the complainant's solicitor that he would not permit the sale to be called in the absence of the petitioner's representative, and there was a breach of such promise. In Campbell v. Gardner, supra, the property had been sold for less than fifteen per cent. of its value. In MutualLife Insurance Co. v. Goddard, 33 N.J. Eq. 482, there was a situation similar to that of Seaman v. Riggins, in that the petitioner's counsel relied upon an express promise by the complainant that the sale would be adjourned. In Kloepping v.Stellmacher, 21 N.J. Eq. 328, property worth $1,500 would have been sacrificed for $52. In Strong v. Smith, 68 N.J. Eq. 650,
the petitioner's *Page 553 
agent in New York City was not notified of the sale until the morning of the day thereof, and was hurriedly obliged to journey to Red Bank, Monmouth county, and in the confusion did not prepare himself with sufficient funds to make the deposit of the required percentage of his bid. All of these cases show immensely more grounds for opening the various sales than in the case in the present application.
Furthermore, every dictate of policy is against interfering with the orderly prosecution of judicial sales. It is common knowledge that mortgagors always experience the keenest regret upon seeing their property swept away upon an execution sale, and I know of no instance where one of them has been successful in his application to set the same aside based upon a mistake such as this. Because, when counsel for the petitioner's husband received the message that an adjournment of the sale had been effected he was astonished, in view of the sheriff's prior information to both lawyers that the sale could not be adjourned until it was called, and thereupon the husband's counsel unavailingly sought to communicate by telephone with the one representing the petitioner. This was the natural course for him to pursue, and had he been successful in his quest the mistake, which is the foundation of this application, would never have been made; but when he then failed to make the next natural inquiry, namely, of the sheriff, I feel that he made the mistake which must bar the petitioner from the relief she seeks. Any other course of decision would render it almost impossible to ever effect and confirm such a sale.
 The petition should be dismissed. *Page 554