WILLIAMS *vs.* DORAN and wife and others.

1. Where the complainant's solicitor consented that the defendant might have an adjournment of the sale of his property, but, owing to the bad faith (if there was any) of the sheriff, or to the negligence of the defendant or the solicitor in not giving the sheriff instructions and attending the sale, the sale was proceeded with and the property struck off, the sale will not be set aside as against the complainant. He is entitled to his decree.

2. An agreement to pay the debts of another must be in writing. Such agreement can be enforced at law, and is no defence or set-off to a suit for the foreclosure of a mortgage debt.

---

Argued on final hearing, upon bill, answer, and proofs.

*Mr. B. Williamson*, for complainant.

*Mr. A. S. Jackson*, for defendants.

THE CHANCELLOR.

The bill in this case is an ordinary foreclosure bill, upon a mortgage given to the complainant by the defendants, Doran and wife, for $10,000, dated November 27th, 1869. The mortgage was given upon property conveyed to Mrs. Doran by Williams at the execution of the mortgage, and was for the whole consideration of that conveyance.

The answer sets up that the mortgaged premises had been the property of Doran, but had been sold and conveyed to

Williams by John Midmer, the sheriff of Hudson county, on the 28th day of October, 1869, for $7000. That foreclosure was for the principal of $6000, with the interest and costs on two mortgages given by Doran and wife, and held by the executor of Cecile Tonnele, deceased. Doran had procured two adjournments of four weeks each, from the sheriff, and asked for another of one week, which the sheriff told him he would grant, but directed him to see the solicitor in the suit, and get his consent. He saw the solicitor and got his consent, and so told the sheriff, but the solicitor sent no written direction, nor gave any by parol to the sheriff. On the day of sale neither Doran nor the solicitor appeared, and the sheriff, instead of adjourning the sale, sold and struck off the property to the complainant, who bid by an agent employed by him generally to purchase property when an advantageous purchase could be made. So far as the evidence shows, Williams or his agent knew nothing of any request to adjourn, or of any arrangement between Doran and the sheriff or the solicitor in that case. The bad faith, if there was any, was that of Sheriff Midmer, and the negligence was that of Doran or the solicitor in not having given the sheriff direct verbal or written instructions to adjourn the sale, and in not attending the sale. Williams was a stranger, a capitalist seeking investment for his money wherever it offered on advantageous terms. There is nothing in the case, if it was presented on bill filed for that purpose, that would authorize setting aside the sale as against him.

After the sale, Doran, who had been deceived or misled by the sheriff or his own negligence, applied to Williams to reconvey the property, which he represented as worth $28,000, and which is shown to be worth about $20,000. Williams, who had expended several hundred dollars in paying taxes in arrear, in commissions to the real estate agent who purchased for him, and in searches as to the title, agreed to convey it back for $10,000, to be secured by mortgage on the property. Some discussion was had whether it had better be conveyed to Doran or to his wife—a question in which Wil-

liams had or took no interest; and it was finally agreed that it should be conveyed to Mrs. Doran, and it was so conveyed by Doran's consent, and he joined in both the bond and mortgage upon which this suit is brought.

He contends in his answer and in the evidence, that Williams agreed to pay certain of his creditors named in a schedule given by him to the sheriff, debts to the amount of about $3000. This promise is proved by Doran; no one else testifies to it. McDonald, one other witness, testifies that he thinks Williams said that the creditors would be all right, but he says he would not swear that Williams agreed to settle with Doran's creditors.

Williams denies, in his testimony, that there ever was such agreement, and it seems improbable that a stranger to the parties, who was investing for profit or speculation, if he had purchased property worth $20,000 for $7000, and paid several hundred dollars in addition, would agree to convey it back, and lose all he had expended in addition to the $7000. No mention was made of this arrangement at the time the deed and the bond and mortgage were executed in presence of the attorney who had prepared them. It would seem natural that this understanding, which was an essential part of the transaction there consummated by these papers, would have then been stated, if not reduced to writing.

The burden of proof is upon the defendant, who sets up this agreement.

If the suit was upon this agreement, which is a promise to pay the debts of another, the agreement to sustain it must be in writing, and if allowed as a defence to this mortgage, the same proof should be required. And if there was such an agreement in writing, it could, if not void for want of consideration, be enforced at law, and would be no defence or set-off on the foreclosure of this mortgage.

The complainant is entitled to a decree for the amount of his mortgage debt, interest, and costs.