ARTHUR T. VANDERBILT, TRUSTEE IN LIQUIDATION, PLAINTIFF-RESPONDENT, v. BRUNTON PIANO COMPANY, A CORPORATION OF NEW JERSEY, ANDREW BRUNTON AND ROBERT H. BRUNTON, DEFENDANTS-APPELLANTS.

Argued May 26, 1933—Decided November 23, 1933.

For the plaintiff-respondent, *Merritt Lane.*

For the defendants-appellants, *Hannoch & Lasser* (*Herbert J. Hannoch,* of counsel).

*Amicus curiæ, Sol Phillips Perlman.*

The opinion of the court was delivered by

CASE, J. The action is at law to recover from the obligors on the bond the deficiency remaining due on the mortgage debt after crediting thereon the proceeds of the sale had in

Chancery in the foreclosure proceedings. The answer, in so far as now relevant, rests strictly and exclusively upon *Pamph. L.* 1933, *ch.* 82, amendatory of an act entitled "An act concerning proceedings on bonds and mortgages given for the same indebtedness and the foreclosure and sale of mortgaged premises thereunder," approved March 12th, 1880. 3 *Comp. Stat., p.* 3420, *pl.* 47, *et seq.* The amendment was passed not merely after the making of the bond in suit, but subsequent to the conclusion of the proceedings in Chancery to foreclose and subsequent also to the institution of the present action on the bond. Mr. Justice Parker, sitting below, struck the answer for the reason that the amendatory statute was unconstitutional in so far as it related to the right to enforce mortgage contracts made and delivered prior to the enactment. Defendants appeal and present the constitutional question as the single issue.

It was the right of the mortgagee, the order in Chancery confirming sale having been duly made and still subsisting, to recover the deficiency in an action upon the bond. That was his right, arising from his contract, under the 1880 statute (as amended *Pamph. L.* 1881, *ch.* 147, *p.* 184), *supra,* which provided that a creditor holding a bond and mortgage, given for the same debt, must in proceeding to collect first foreclose the mortgage but that if, at the foreclosure sale, the premises should not sell for a sum sufficient to satisfy the debt, interest and costs, it would then be lawful to proceed on the bond for the deficiency. The deficiency was the amount by which the debt, as adjudged by the Court of Chancery in the foreclosure decree, exceeded the proceeds from the sale conducted by that court. *Murray* v. *Pearce,* 95 *N. J. L.* 104. The 1880 statute was effective when the contract was made, and that statute therefore entered into the contract without need for express stipulation to that effect. *Bronson* v. *Kinzie,* 1 *How.* 311; 11 *L. Ed.* 143. The mortgagee instituted such an action on the bond and then, and not until then, came the 1933 amendment. That amendment provides that the obligor may, by his answer in an action on the bond for the deficiency, dispute the amount of the deficiency and—not in the forum

which conducted the sale, but in the action at law on the bond—raise an issue on the "fair market value of the mortgaged premises at the time of the sale under the foreclosure proceedings," whereupon the court which is trying the action on the bond, sitting with or without a jury, shall assess the "fair market value" and determine the deficiency by deducting that value from the debt. There can be no doubt that the amendment substitutes the "fair market value" determined in the subsequent action on the bond in place of the proceeds of the sale in foreclosure as the credit to be allowed the debtor in reduction of the debt. It is apparent that when an obligee on a bond has, as an incident to his contract, the right to recover a liquidated sum, first by receiving the proceeds from the sale of the pledged property and supplementarily by a personal action, and a statute is thereafter passed, the direct effect of which is to provide an opportunity to the debtor for reducing the sum recoverable, his contract is impaired. It might well happen in a given case that under the questioned statute the entire right sued upon in the law action would dissolve.

We are considering the statute. It is unimportant that the foreclosure sale in the case at bar was to the mortgagee himself. The statute applies, without distinction, whether the sale be to the mortgagee or to a third party, and the statute is incapable of dissection so that it may be held to apply in the one instance and not in the other. There is no legal obligation upon a mortgagee either to bid up, or to bid in, the property at the foreclosure sale, and the impairment of his contract is the more obvious when the property is struck off to a third person at a figure less than that subsequently fixed in the action on the bond as the "fair market value." In such a posture the mortgagee has no further recourse to the property itself; the property is gone with no right of redemption in him. He is compelled to forfeit a part of the debt which his contract, valid and enforceable when made, gave him; at least his remedy for enforcing the contract has been taken away. On the first assumption, his contract is impaired. On the second, he is deprived of a remedy. The law that accom-

plishes the former of these results is in conflict with both the federal and the state constitutions, and one that accomplishes the latter is in conflict with the state constitution. In truth, the taking away of the remedy in the supposed instance is inseparably combined with and equivalent to the taking away of the right itself. Our attention is called by the appellants to *Rahway* v. *Munday*, 44 *N. J. L.* 395 (at *p.* 414), where this court said that our state constitution, in providing that the legislature should not pass a law depriving a party of any remedy for enforcing a contract which existed when the contract was made, appeared to add little, if any, force to the inhibition against a law impairing the obligation of a contract; as to which it may be observed that in our view little, if any, force need be added in the present instance, and, further, that the language was based on the opinion expressed by the United States Supreme Court in *Louisiana* v. *New Orleans*, 102 *U. S.* 203; 26 *L. Ed.* 132, that "the obligation of a contract, in the constitutional sense, is the means provided by law by which it can be enforced; by which the parties can be obliged to perform it. * * * Any authorization of the postponement of payment, or of the means by which such postponement may be effected, is in conflict with the constitutional inhibition." This passage was quoted in *Baldwin* v. *Flagg*, 43 *N. J. L.* 495, 503, which, though a Supreme Court case, is one of our most frequently cited decisions and has always stood as the law.

The statutory setting up of fair market value, standing stark and alone, as a self-sufficient, resistless fact in reduction of an otherwise collectible debt is such a restriction and limitation upon the mortgagee's right of recovery as to be an impairment of a pre-existing contract and therefore, and to that extent, in conflict with article 1, section 10, subdivision 1 of the constitution of the United States which provides that "no state shall * * * pass any * * * law impairing the obligation of contracts * * *" and with article 4, section 7, paragraph 3 of the constitution of the State of New Jersey which provides that "the legislature shall not pass any * * * law impairing the obligation of contracts, or

depriving a party of any remedy for enforcing a contract which existed when the contract was made." *Baldwin* v. *Flagg, supra; Wilkinson* v. *Rutherford,* 49 *N. J. L.* 241; *Coddington* v. *Bispham,* 36 *N. J. Eq.* 224; *Morris* v. *Carter,* 46 *N. J. L.* 260, 267.

The appellants contend, first, that the statute does not offend the constitution because, as they claim, a remedy of substantially like sort and character already exists in equity and, second, that the statute establishes a measure of damages and is therefore merely procedural; citing *Newark Savings Institution* v. *Forman,* 33 *N. J. Eq.* 436. That decision, we think, is not pertinent to the facts and issue of the present case. Our finding, which will presently appear, that there are fundamental differences between the new procedure under the recent statute and the existing remedy in equity, places the present controversy entirely beyond the application of Newark Savings Institution *v.* Forman. That decision rests upon the following conclusion (page 441—italics ours): "The act under consideration leaves the complainant a substantial remedy *(of the same kind as that taken away)*, according to the course of justice, as it existed when the contract was made a remedy, which is not only *of the same sort,* but is *even more efficacious than that which it takes away.* It has only taken away one of two remedies *of a like character,* one at law and the other in equity, and that is no contravention of the complainant's constitutional right."

The contention that the same course in substance may be pursued in Chancery is not sound. In asserting the contrary the appellants rely mainly upon the principles enunciated in the recent Chancery case *Federal Title and Mortgage Guaranty Co.* v. *Lowenstein,* 113 *N. J. Eq.* 200. In the case at bar the record is almost barren of illuminating facts but does disclose that the sheriff, on the advertised day of the foreclosure sale, first struck off the property, after competitive bidding, to an undisclosed bidder for $60,000, following which he conducted other sales and disposed of other matters, and then, finding that the successful bidder had failed to make the required down payment, forthwith offered the property

for resale and struck it off to the mortgagee for the sum of $100, a price shockingly out of proportion to the amount of the mortgage as well as to the earlier bids. Perhaps other willing bidders had departed on the original declaration of sale. Whatever the reason, the outcome appears to have been a gross inequity; but, assuming this to be true, an ample remedy, exemplified by the cited case, was at hand. It is within the broad powers of the Court of Chancery to withhold confirmation of a sale if to confirm would work gross inequity. That principle was applied in Federal Title and Mortgage Guaranty Co. v. Lowenstein. With that remedy available as a step in the then pending cause, the present appellants, parties to the Chancery action, permitted the order confirming to go as of course. They have never challenged that order. If the appellants were, as they seem to have been, subjected to a wrong in the Court of Chancery, the wrong should have been righted in the court where it occurred; where, also, the remedy could be applied with due regard to the rights and equities of the opposing party.

There are at least two respects in which the remedy applied in the Federal Title case, which may be referred to as a concrete illustration of the principles involved, differs in substance from the provisions of the 1933 amendment:

First, that case turned on the power of the court to control its own sale and the result was to withhold confirmation at a stage when the mortgagee was free either to take the property at the court's valuation or to suspend the proceedings and, retaining the mortgage security, bide his time. That alternative is not available, under the amendment to the creditor who has reached the stage of suing on the bond.

Second, the essence of Vice-Chancellor Berry's opinion in that case, as we understand it, is that equity will not suffer a wrong without a remedy, that a foreclosure sale is not fully a sale until confirmed by court order, that where the circumstances of the sale are such as to shock the conscience of the court no order confirming will be made and that in the matter then under review there was an inadequacy of price so gross, and there were other recited facts and circumstances

so inequitable, that an order confirming should not go except upon terms. We do not pass upon the facts of that case, but the reasoning, as just reviewed, is, we think, a sound exposition of equitable principles in the light of which, and subject to the application of which, the mortgage contract was made. If there be real or supposed error in any application, by Chancery, of equitable principles to a given state of facts, there is always the opportunity for a review on appeal. The question is peculiarly appropriate to equity jurisdiction. But the proposition now advanced is that the power of the Court of Chancery to view the whole field of related circumstance, to place all parts of the picture in true perspective, and to refuse an order which on this showing would work shocking injustice is correlative with the right, created for the first time by this statute, of an obligor on the bond to reduce or wipe out his debt by resort to the single and isolated fact, to be ascertained by the court in which the bond is sued, of "market value" at the time of a sale *had and consummated under the order of another court* months before, however inequitable such reduction or destruction may be upon a view of the entire case. We find to the contrary.

As to appellants' second point, it is clear from the foregoing discussion, without more, that a right and not a mere procedure is involved. If a legislative act so changes the nature and extent of an existing remedy as to impair the rights and interest of the owner, it is just as much a violation of the compact as if it directly overturned his rights and interests. *Bronson* v. *Kinzie, supra; McCracken* v. *Hayward*, 2 *How.* 608; 11 *L. Ed.* 397; *Lessee of Gantley et al.* v. *Ewing*, 3 *How.* 707; 11 *L. Ed.* 794, 798.

It is next said that the constitutionality of the statute may be sustained under the police power; and the burden of this argument assumes that the act was passed simply to save mortgagors from oppressive suits in the present financial emergency.

As has been already stated, the appellants rely wholly and exclusively upon the statute; and the statute neither purports to be directed towards an emergency nor limits the applica-

tion of the enactment either in field or in time. Its purview is absolute, final and permanent. It extends to all classes of property—homes, business properties, speculative ventures, everything. According to its terms it is in force henceforth and forever. If effective now, it will be just as effective after, and entirely regardless of, the passing of the emergency. To hold that the police power enables the legislature to do that against an existing contract would be to contravene the provisions, *supra,* of the constitutions, both federal and state. Appellants cite *Levy* v. *Siegel,* 258 *U. S.* 242; 66 *L. Ed.* 595; *Block* v. *Hirsch,* 256 *U. S.* 135; 65 *L. Ed.* 865; *Chastleton Corp.* v. *Sinclair,* 264 *U. S.* 543; 68 *L. Ed.* 841; *People* v. *La Fetra,* 257 *U. S.* 665; 230 *N. Y.* 429; 130 *N. E. Rep.* 601; *Marcus Brown Co* v. *Feldman,* 256 *U. S.* 170; 65 *L. Ed.* 877, and *In re Opinion of the Justices,* 278 *Mass.* 607; 181 *N. E. Rep.* 833. All but the last of these cases bore upon housing legislation, effective during the housing shortage immediately following the world war, avowedly made to tide over the mentioned emergency and expressly limited to short duration. Mr. Justice Holmes said in Block *v.* Hirsh: "As emergency legislation the title is to end in two years unless sooner repealed. * * * A limit in time, to tide over a passing trouble, well may justify a law that could not be upheld as a permanent change." The Massachusetts case concerned certain regulations imposed upon savings banks chartered by that commonwealth to do business and need not be reviewed further than to quote therefrom these words: "Depositors of savings banks cannot be despoiled under the guise of police regulations."

We may take judicial notice of the financial emergency that now presses upon so many people in so much of the world, but we may not read into the statute a limited duration that is neither expressed nor implied therein nor do we subscribe to the intimation that an emergency automatically lifts all constitutional restraints. The statute does not grant a stay or a delay and therefore does not deal with the question of a moratorium. The subject-matter of the point under discussion does not save the statute from the fault laid against it.

We conclude that the 1933 amendment is unconstitutional in so far as it purports to restrict or limit the pre-existing right of recovery on the bond. The judgment will be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, TREN-CHARD, CASE, BODINE, DONGES, PERSKIE, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, DILL, JJ. 13.

*For reversal*—None.