27 N.J. Super. 448 (1953)
99 A.2d 526
HENRY W. CRANE, PLAINTIFF-RESPONDENT,
v.
MARY BIELSKI, WIDOW, AND GENEVIEVE BUSH, UNMARRIED, DEFENDANTS-APPELLANTS AND CROSS-RESPONDENTS; WILLIAM ROSOFF AND NETTIE ROSOFF, HIS WIFE, PURCHASERS AT FORECLOSURE SALE, RESPONDENTS AND CROSS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued August 31, 1953.
Decided September 28, 1953.
*450 Before Judges GOLDMANN, W.A. SMITH and EWART.
Mr. A. Donald McKenzie argued the cause for the purchasers at foreclosure sale, respondents and cross-appellants (Messrs. Kein and Scotch, attorneys; Mr. Maurice A. Scotch, of counsel).
The opinion of the court was delivered by EWART, J.A.D.
These appeals are from an order made by the Chancery Division of the Superior Court on May 20, 1953 setting aside a foreclosure sale made by the Sheriff *451 of Union County on April 8, 1953 at which the cross-appellants William and Nettie Rosoff had purchased the mortgaged premises on their bid of $12,200. The action of the court in setting aside the sale was based upon a verified petition of the defendant Mary Bielski, owner of the mortgaged premises, and the defendant Genevieve Bush, her daughter, who had signed the bond accompanying the mortgage, which petition alleged that the sale was for an inadequate price and that the petitioners (defendants in the foreclosure suit) had no notice of the sale date. The petition was supported by further affidavits of the petitioners. Affidavits in opposition were filed by William Rosoff, purchaser at the sheriff's foreclosure sale; by Myles C. Morrison, the attorney who conducted the foreclosure proceedings for the plaintiff; by Sheriff Campbell; and by Robert R. Daly, an attorney who was consulted by the defendants prior to the sale.
The order setting aside the sale found: (1) that the bid of $12,200 made by cross-appellants William and Nettie Rosoff was not an inadequate price as alleged in the petition and affidavits filed; (2) that the failure of the defendants to attend the sheriff's sale on April 8, 1953 was the result of a misunderstanding and mistake on their part; and (3) that by reason of the said misunderstanding and mistake the sheriff's sale to the cross-appellants William and Nettie Rosoff be set aside, but upon these conditions: (a) that the defendants pay the full amount of the judgment and costs to the plaintiff Crane on or before June 5, 1953, in default whereof the said sheriff's sale should be and is confirmed; (b) that the defendants shall pay to Kein & Scotch the sum of $350, "which sum is herewith allowed to Kein & Scotch as a counsel fee and title fee for services rendered to William Rosoff and Nettie Rosoff, his wife, in the premises, provided redemption is made by Mary Bielski and Genevieve Bush"; and (c) that the defendants shall repay to William and Nettie Rosoff the full amount theretofore deposited by them with the sheriff at the time of the sheriff's sale, together with interest at the rate of 6% from the date of the deposit to the date of repayment.
*452 From this order setting aside the sheriff's sale on the conditions mentioned, defendants Bielski and Bush appeal upon the grounds: (1) that the portion of the order allowing a counsel fee and title fee for services rendered to the purchasers at the sheriff's sale was improper and contrary to the rules, and (2) that the provision in the said order directing the defendants to pay interest on the deposit made by the purchasers with the sheriff at the time of the sale is inequitable and imposes an improper penalty upon them.
William and Nettie Rosoff were not parties to the suit but were the successful bidders at the sheriff's sale. They have filed a cross-appeal from the order setting aside the sale on the grounds: (1) that there was no mistake involved in the foreclosure proceedings or sheriff's sale sufficient to entitle the mortgagors to have the sale set aside; (2) that the mistake, if any, was unilateral and caused solely by the neglect of the mortgagors themselves, or their attorney; and (3) that the mistake, if any, did not prejudice the defendants.
A perusal of the record in this case discloses the following undisputed facts: The complaint in the foreclosure suit was filed November 19, 1952, due service was made upon defendants, and the suit was prosecuted to final judgment. At the sheriff's sale there was due the plaintiff to the date of the sale, including the amount of the judgment, interest thereon, costs and sheriff's fees, the sum of $7,748.44. The sale was not attended by either of the defendants, but there was competitive bidding at the sale and the bid of $12,200 made by the cross-appellants Rosoff would have produced a surplus of some 4,450 odd dollars over the amount required to be raised by the execution. The sale was originally advertised by the sheriff to be held on March 25, 1953. Defendants had notice of that date of sale and on March 19, 1953 first consulted Attorney Robert Daly. Mr. Daly's office arranged a two-week adjournment of the sale, which was ultimately held on April 8, 1953 at 2:00 P.M. While Attorney Daly claims to have notified the defendants by telephone prior to April 8, 1953 of the fact that the sale was to be *453 held on the latter date, defendant Bush claims that she had no notice that the sale was to be held on the date mentioned until she received a letter from Attorney Daly written by him on April 7, 1953, which letter was received by her on the evening of April 8, 1953 and after the sale had taken place. Attorney Daly states that notwithstanding his communication by telephone to the defendant Bush that the sale was to be held April 8 and that he could do nothing for her in the matter, she continued to telephone him about it thereafter and that he wrote the letter of April 7, 1953 to her to make clear his position. In any event, whether the defendants had actual notice that the sale was going to be held on April 8, 1953, it clearly appears that they did have notice that the sale was originally advertised to be held March 25, 1953 and that the adjournment of the sale was secured by Mr. Daly's office at their behest. Neither the defendants, nor Attorney Daly, nor any one else representing the defendants, attended at the sheriff's sale.
No allegations have been made respecting any irregularity in the foreclosure suit, or the conduct of the sheriff in advertising the sale, or in the holding of the sale other than the claim of the defendants that by mistake and misunderstanding they did not know that the sale was going to be held on April 8, 1953, and that by reason of their ignorance of that fact they failed to attend the sale or to be represented at the sale. There is no charge of fraud or sharp dealing or improper action by the purchasers at the sale or by any one else connected with the sale.
Upon the factual situation disclosed above, was the Chancery Division warranted in setting aside the sale over the protest of the purchasers Rosoff?
It is well established in this State and public policy ordains that the power to set aside judicial sales based upon competitive bidding should be sparingly exercised. As said by Justice Heher in Karel v. Davis, 122 N.J. Eq. 526, at page 529 (E. & A. 1937):
"For obvious reasons, public policy ordains that the power to set aside judicial sales based upon competitive bidding should be *454 sparingly exercised. The integrity of the process, designed as it is to secure the highest and best price in cash then obtainable for the property, demands that a sale so conducted shall be vacated only when necessary to correct a plain injustice. Thus it is that in such matters the court is enjoined to exercise a sound discretion, guided by considerations of justice and equity and not by whim or caprice."
Cf. Morrisse v. Inglis, 46 N.J. Eq. 306 at page 309 (E. & A. 1889), and Guarantee Trust Co. v. Fitzgerald Hotel and Development Corp., 97 N.J. Eq. 277, at page 279 and 280 (E. & A. 1924). In the case last cited, Chief Justice Gummere states that it had long been the settled doctrine and practice of the courts of this State that judicial sales, made without irregularity or fraud, and which have not been affected by accident or mistake, will not be set aside for mere inadequacy of price, and quotes from the opinion of Mr. Justice Magie in the case of Morrisse v. Inglis as follows:
"This well-known practice is in accord with the policy of our law respecting such sales, which are required to be made, after advertisement sufficient to give publicity, by public outcry to the highest bidder. It is of the greatest importance to encourage bidding by giving to every bidder the benefit of bids made in good faith, and without collusion or misconduct, and, at least, when the price offered is not unconscionably below the value of the property. Nothing would more evidently tend to discourage and prevent bidding than a judicial determination that such a bidder may be deprived of the advantage of his accepted bid whenever any person is willing to give a larger price. The interest of owners in particular cases must give way to the maintenance of a practice which, in general, is in the highest degree beneficial."
The record in this case discloses no irregularity in connection with the foreclosure of the mortgaged premises; nor in the action of the sheriff in advertising the premises for sale to be held March 25, 1953; nor in the action of the sheriff in peremptorily adjourning the sale from March 25 to April 8, 1953 at the request of Attorney Daly, representing the defendants; nor does it reveal any fraud, deceit, sharp practice, or undue advantage practiced by Rosoff, the purchaser. The only grounds upon which defendants sought *455 to have the sale set aside were that the price realized at the sheriff's sale was inadequate and that they did not know that the sale was to be held on April 8, 1953 and consequently were not in attendance at the sale.
The record supports the conclusion of the judge that the sales price of $12,200 was not inadequate.
Conceding for the purpose of the discussion that in fact the defendants had no actual knowledge that the sale was to be held April 8, 1953, they offer no adequate explanation of their failure or neglect to display sufficient interest in the matter, after the sale advertised for March 25 had been adjourned, to inquire or ascertain as to when the sale would be held. They were in touch with their attorney, Mr. Daly, by telephone and otherwise, and could readily have ascertained the fact from him. They resided in the mortgaged premises at 986 Townley Avenue, Union, N.J., and a telephone call to the sheriff's office at Elizabeth, N.J., would no doubt have given them the necessary information. Instead of making inquiry, however, they apparently did nothing. Those circumstances, we think, warrant the conclusion that the lack of knowledge of the defendants of the fact that the premises were to be sold on April 8, 1953 (if indeed they did lack knowledge of the fact), is to be attributed not to accident or mistake or deceit or fraud, but solely to the neglect of the defendants. Parkhurst v. Cory, 11 N.J. Eq. 233 (Ch. 1856); Williams v. Doran, 23 N.J. Eq. 385 (Ch. 1873); Hewitt v. Montclair Ry. Co., 25 N.J. Eq. 392 (Ch. 1874); Hayes v. Stiger, 29 N.J. Eq. 196 (Ch. 1878); Murray v. D'Orsi, 98 N.J. Eq. 548 (Ch. 1925); Atlantic Safe Deposit and Trust Co. v. Thommessen, 8 N.J. Misc. 403, 150 A. 579 (Ch. 1930); 31 Am. Jur., Judicial Sales, section 116.
In Parkhurst v. Cory, supra, the court, in refusing to set aside a sheriff's sale, said at pages 235-6:
"Surprise is one of the grounds upon which the court interferes, and orders a re-sale, when a party has suffered loss by the property's having been sacrificed. But where the surprise is owing to the neglect of the party injured, and is of a character which *456 would have been avoided by the exercise of ordinary prudence, as a general rule the court will not interfere. If the petitioner was surprised by the sale, he ought not to have been. The surprise was not created by misconduct or inadvertence of any third person, but by the sheer neglect and inattention of the petitioner himself."
In Murray v. D'Orsi, supra, Vice-Chancellor Bentley, in refusing to set aside a sale, said at page 550:
"There can be no doubt that courts have gone to great lengths in applying the doctrine of mistake. But they have always recognized that negligence upon the part of him by whom it is invoked will defeat its application, and this is so whether the fault lie at the door of the party himself or his representative."
In Hewitt v. Montclair Ry. Co., supra, the court refused to set aside the sale in part because the petition did not allege that any greater price would be realized on a resale or that a resale would benefit the petitioner.
In Atlantic Safe Deposit and Trust Co. v. Thommessen, supra, the court refused to set aside a sale, holding that petitioner's illness was no excuse for not being represented at the sale and that in any event the property brought an adequate price at the sale.
There is no showing in this case that the defendants suffered injury in a legal sense in the sale they seek to set aside. The Chancery Division found that the sales price was not inadequate. The bid of $12,200 was more than $4,450 in excess of the amount to be raised at the sale. It was not shown that the defendants, at the time of the sale, possessed the means of redeeming or of bidding at the sale had they been present, and without proof of their financial ability to redeem before sale or to bid at the sale, it is difficult to see how they were prejudiced by the fact that they were not in attendance, nor represented, at the sale.
Generally speaking, inadequacy of price at a sale is a necessary element to justify the setting aside of the sale. Eberhart v. Gilchrist, 11 N.J. Eq. 167 (Ch. 1856); Guarantee Trust Co. v. Fitzgerald Hotel and Development Corp., *457 97 N.J. Eq. 277 (E. & A. 1924); Federal Title and Mortgage Guaranty Co. v. Lowenstein, 113 N.J. Eq. 200 (Ch. 1933).
In the Fitzgerald Hotel and Development Corp. case, supra, Chief Justice Gummere held that only such mistakes as had been producing causes of the sacrifice of the property will justify the setting aside of a judicial sale for inadequacy of price.
In the Lowenstein case, supra, Vice-Chancellor Berry at pages 204 and 205 lists numerous cases where sales were set aside, but in every one of those cases inadequacy of price was one of the elements present.
In Karel v. Davis, supra, Justice Heher, while recognizing that confirmation or refusal of confirmation, of a judicial sale is to be given or withheld in the exercise of a sound discretion, consonant with the requirements of equity and justice, yet plainly states that the judicial authority is not invested with a discretion unlimited in passing upon the subject.
We conclude, as did the Chancery Division, that the price of $12,200 bid at the sheriff's sale by the cross-appellant Rosoff was not an inadequate price; that the property was not sacrificed at the sale and that defendants suffered no prejudice nor injury in a legal sense by the sale; and that the failure of the defendants to attend the sale or be represented at the sale was due not to any misadventure, fraud, deceit or other like cause, but was due to their own negligence and inattention. If duly advertised judicial sales are subject to be set aside for slight causes, particularly where inadequacy of price is not involved, it will indeed be difficult to induce prospective buyers to bid at such sales and, in that event, the owners of properties being foreclosed will be the ultimate losers for lack of sufficient bidding.
In view of what has been said above, we conclude that it was a mistaken exercise of judicial discretion to have set aside this sale in the first instance, and that the order to show cause why the sale should not be set aside should have been discharged.
*458 In their petition to the Chancery Division of this court for an order setting aside the sale, defendants relied upon equitable grounds, namely: (1) that the price realized at the sale was inadequate, and (2) that by reason of mistake they had no knowledge that the property was to be sold on April 8, 1953. However, in their answering brief to the cross-appeal of the purchasers William and Nettie Rosoff, defendants assert for the first time that the court was justified in permitting redemption under the decision in Ghee v. Davenport, 2 N.J. Super. 532, affirmed in part 4 N.J. Super. 518 (App. Div. 1949).
The action of the Chancery Division in setting aside the sale was based upon the equitable grounds mentioned and not upon the idea that defendants had a right to redeem in any event. The present claim of defendants of right to redeem, independent of equitable grounds, is something new injected into the case, not submitted to or considered by the Chancery Division, and represents a shift of position. Ordinarily, they should not now be heard to argue a matter not submitted to nor considered by the trial court. Schwartz v. Rothman, 1 N.J. 206 (1948).
Prior to September 15, 1948 the statute (R.S. 2:65-12) required the sheriff upon a foreclosure sale to report the sale within five days and authorized the court to approve and confirm the sale as valid, provided the court should be satisfied by affidavits or otherwise that the premises were sold at the highest and best price then obtainable in cash. If confirmed, the court then directed the sheriff to execute and deliver a deed of conveyance. And by rule of court (old Chancery Rule 218) the order of confirmation could not be entered until the expiration of ten days from the date of sale. However, L. 1948, c. 378, as amended, L. 1949, c. 112 (R.S. 2:65-12) provided that reports of sale and confirmation of sale should only be required as the practice and procedure of the Superior Court might require. And the statute is carried forward in the revision, N.J.S. 2A:50-19.
Rule 3:77-5 (now R.R. 4:83-5) of the Superior Court authorizes the sheriff to deliver a deed in pursuance of the *459 sale unless a motion for the hearing of an objection to the sale be served upon him within ten days of the date of sale, or at any time thereafter before delivery of the deed.
Thus the statute and the rule cited did away with the former requirement that a sheriff's foreclosure sale be confirmed by the court prior to execution and delivery of the deed, and now authorizes the sheriff to execute and deliver a deed without confirmation after the expiration of ten days from the date of sale unless there shall be served upon him within said ten-day period notice of a motion for the hearing of an objection to the sale, which motion the court is authorized to dispose of in a summary manner.
It is true that under the old practice requiring a report of sale and confirmation by order of the court, a foreclosure sale by a sheriff was not complete until confirmed by order of court. Federal Title and Mortgage Guaranty Co. v. Lowenstein, 113 N.J. Eq. 200 (Ch. 1933); Vanderbilt v. Brunton Piano Co., 111 N.J.L. 596 at 601 (E. & A. 1933). At the present time, however, no confirmation being required and the sheriff being authorized to execute and deliver a deed after the expiration of ten days from the date of the sale, there is no reason for holding that a sheriff's sale is not complete when made, subject only to the inherent power of the court to set the sale aside if sufficient cause be shown upon motion made within ten days of the date of the sale, of which notice must be given the sheriff.
It has long been settled law in this State that a defendant's right of redemption is cut off by the sheriff's sale, assuming subsequent confirmation, when confirmation was required, and that the rights of the parties when the sale is confirmed relate back to the time of the sale.
In Wimpfheimer v. Prudential Insurance Co. of America, 56 N.J. Eq. 585 (Ch. 1898), a subsequent encumbrancer who was a party to the foreclosure suit on a prior mortgage, after the foreclosure sale filed a bill to redeem the mortgaged premises from the mortgagee who had purchased at the sale. The court held that the suit was not maintainable and said in part:
*460 "On sales by sheriff under execution, at common law, the deed, when delivered, relates back to the time of sale * * * the equitable rights of the parties are fixed by the contract of sale, subject only to confirmation by the court, and, if confirmed, the deed, as to the rights conveyed, must relate back to the time of sale." (page 591)
and the court further said:
"In my opinion the complainants' right of redemption was cut off by the sale which was subsequently confirmed, * * *." (page 592)
In Union Building & Loan Association of Camden v. Childrey, 97 N.J. Eq. 20 (Ch. 1924), the mortgagor filed a petition to redeem after the sheriff's foreclosure sale had been made and the sale confirmed, but before the sheriff's deed had been executed or delivered. In denying the petition, Vice-Chancellor Leaming noted the form of the decree in a mortgage foreclosure suit "That the defendants stand absolutely debarred and foreclosed of and from all equity of redemption in and to the said mortgaged premises when sold as aforesaid by virtue of this decree"; noted the contention of the petitioner-mortgagor that although the right of redemption could not be said to extend beyond the time of sale, still the sale could not be understood as having been made until the deed was delivered pursuant to an order of confirmation, since the sale is consummated by delivery of the deed; and stated at page 23:
"On the contrary, I am convinced that the `sale' which the statute contemplates, and which the decree specifically refers to as the time when the equity of redemption shall be deemed foreclosed, is the public sale made by the officer as distinguished from the deed of conveyance which is to be executed after the sale shall have been confirmed."
Notwithstanding the holding in Ghee v. Davenport, supra, it seems plain to us that if the right of redemption were cut off by the sheriff's sale, subject only to subsequent confirmation of sale, prior to September 15, 1948, then since no confirmation is presently required the right of redemption *461 of a mortgagor is now cut off by the sheriff's foreclosure sale made pursuant to the judgment of the court and the execution issued thereon.
For the reasons that the defendants have no right at this time to argue a claim not presented to or considered by the trial court and that the right of redemption of the defendants was cut off by the sheriff's sale held April 8, 1953, we find no legal justification for permitting the defendants to redeem subsequent to the date of the sheriff's sale.
In view of the conclusions expressed above on the main contention as to whether or not the sheriff's sale should or should not have been set aside, it is unnecessary to deal with the other points raised by defendants, viz: (1) whether the Chancery Division was warranted in allowing a counsel fee and title fee to the attorney for the purchasers, and (2) whether, in case of redemption, the defendants should have been required to pay interest on the deposit made by the purchasers with the sheriff.
On the whole case, we find that the order entered in the Chancery Division May 20, 1953 setting aside the sheriff's sale on certain conditions therein named should be set aside in toto.