**In the Matter of Beverly ROSS, Debtor.**

**Bankruptcy No. 95–13536.**

United States Bankruptcy Court,
D.New Jersey.

Feb. 1, 1996.

Brad J. Spiller, Brenner and Brenner, Camden, New Jersey, for debtor.

Elizabeth T. Edge, Farr, Burke, Gambacorta & Wright, Bellmawr, New Jersey, for Commercial Credit Corporation.

JUDITH H. WIZMUR, Bankruptcy Judge.

The mortgagee on debtor's residence, Commercial Credit Corporation, moves for relief from the automatic stay, challenging debtor's opportunity under 11 U.S.C. § 1322(c)(1) to cure arrearages on her home mortgage after a foreclosure judgment has been entered and a sheriff's sale has been held.

## *FACTS*

Movant Commercial Credit Corporation and debtor entered into a mortgage agreement dated August 18, 1989, evidenced by a mortgage and mortgage note in the amount of $65,000, secured by debtor's residential real property located at 25 Rondon Avenue, Berlin, New Jersey. Following debtor's default under the agreement, plaintiff obtained a foreclosure judgment on March 8, 1995. A writ of execution was also issued on March 8, 1995.

On June 9, 1995, a sheriff's sale was held, and CC Home Lenders Services, Inc., the mortgagee,[1] was the successful bidder. A sheriff's deed was issued to the mortgagee on June 16, 1995.[2] On the same date, June 16, 1995, debtor Beverly Ross filed a petition for relief under Chapter 13 of the Bankruptcy Code.[3] Debtor's Chapter 13 plan proposed to cure the amount of the default ($14,000) to the mortgagee, reinstate the mortgage, and maintain regular monthly payments outside of the plan.

Movant filed an objection to debtor's plan on October 30, 1995, and sought relief from the automatic stay, asserting that debtor's opportunity to cure default under 11 U.S.C. § 1322(c)(1) terminated upon the fall of the gavel at the sheriff's sale, leaving only debtor's redemption opportunity, extended for 60 days by operation of 11 U.S.C. § 108(b), which had also expired.

Debtor responded that a Chapter 13 debtor retains the opportunity to cure default on a mortgage until the foreclosure sale is final "under applicable nonbankruptcy law." In New Jersey, following the sheriff's sale, a debtor has ten days to redeem the property and/or to object to the sale before the issuance of a sheriff's deed. Debtor contends that she retains a property interest, i.e., the right to redeem the property, or to defeat the sale by sustainable objection, until the sheriff's deed is issued, at which point the sale becomes final. Until that finality is achieved, the property has not yet been "sold at foreclosure sale," and the debtor may cure a default under 11 U.S.C. § 1322(c)(1).

## *DISCUSSION*

Prior to the Bankruptcy Reform Act of 1994, Pub.L.No. 103–394 (codified as amended at 11 U.S.C. §§ 101, et. seq. (1994)) ("Reform Act")[4], courts were divided as to the point in the foreclosure process that a debtor lost the right to cure a default and reinstate a mortgage under Chapter 13. The right to cure a default on a home mortgage in a Chapter 13 plan is authorized under 11 U.S.C. § 1322(b)(5), notwithstanding the pro-

---

1. Commercial Credit Corporation f/k/a CC Home Lenders Services, Inc. f/k/a Barclays/American Financial, Inc.

2. We have no explanation in the record for the issuance of the sheriff's deed before the expiration of the 10-day objection period under New Jersey Court Rule 4:65–5.

3. We do not know which came first, the issuance of the sheriff's deed or the filing of the petition.

4. The amendments made by the Bankruptcy Reform Act of 1994 are applicable to cases filed after October 22, 1994.

scription against modification of a home lender's secured claim under 11 U.S.C. § 1322(b)(2).[5] Based on application of state law, courts had found the termination point for curing default to range from the entry of the foreclosure judgment, *see, e.g., In re Roach*, 824 F.2d 1370 (3d Cir.1987), to the expiration of the redemption period, *see, e.g., In re Ragsdale*, 155 B.R. 578 (Bankr. N.D.Ala.1993).

The Reform Act added a provision to Chapter 13 which sought to clarify the termination point for curing default. As amended, section 1322(c) reads:

> (c) Notwithstanding subsection (b)(2) and applicable nonbankruptcy law—
>
> (1) a default with respect to, or that gave rise to, a lien on the principal residence may be cured under paragraph (3) or (5) of subsection (b) until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law.

11 U.S.C. § 1322(c). The new provision establishes the termination point for the curing of default, notwithstanding the anti-modification provisions of § 1322(b)(2) and regardless of the impact of applicable non-bankruptcy law, e.g., state law governing the foreclosure of a debtor's property interest, as the point at which the residence is "sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law." By the phrase "notwithstanding ... applicable non-bankruptcy law," Congress has determined to fix a uniform federally prescribed termination point for curing default on a residential mortgage in a Chapter 13 plan, which would vary from state to state only to reflect differences among the states in the "conduct" of the sale. Congress specifically rejected the *Roach* termination point of foreclosure judgment as "in conflict with the fundamental bankruptcy principle allowing the debtor a fresh start through bankruptcy." H.R.Rep. 103–835, 103rd Cong., 2nd Sess. 52 (Oct. 4, 1994) U.S. Code Cong. & Admin.News 1994 pp. 3340, 3361; 140 Cong. Rec.H. 10752–01, 10769 (Oct. 4, 1994).

■ A distinction is drawn between the § 1322(c)(1) opportunity to cure a default on an obligation secured by a mortgage on the debtor's residence, and the identification of the property interests of the debtor, including redemption interests, in property pledged to secure that obligation after sheriff's sale. As the Third Circuit explained in the context of curing a default on a home mortgage under § 1322(b)(2) and (5) (prior to the passage of § 1322(c)(1)), "the parties err when they focus on how much of a property interest the [debtors] retained following the foreclosure sale. The relevant text of § 1322(b) [and now § 1322(c)(1) ] speaks of obligations of the debtor as to which cure of a default is authorized, not of the property interests of the debtor in property pledged to secure those obligations." [6] *In re Roach*, 824 F.2d at 1372, n. 1. Accordingly, we reject debtor's contention that debtor's opportunity to cure default under § 1322(c)(1) depends upon the status of the debtor's property rights, including debtor's right to redeem, under state law. The debtor's opportunity to cure under § 1322(c)(1) terminates when the property is "sold at foreclosure sale." The debtor's state law right of redemption, to the extent that it exists when a bankruptcy petition is filed, extends for 60 days beyond the state law

---

**5.** In relevant part, 11 U.S.C. Section 1322(b) provides that a Chapter 13 plan may:

> . . . . .
>
> (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;
>
> . . . . .
>
> (5) notwithstanding paragraph (2) of this subsection, provide for the curing of any de-

fault within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due.

**6.** Although the *Roach* case was legislatively overruled by the enactment of § 1322(c)(1), we believe that the *Roach* analysis which draws distinction between curing default under § 1322 and evaluating a debtor's property interests at the time of the filing, including redemption opportunities, survives.

time frame by operation of 11 U.S.C. § 108(b) upon the filing of a petition. *Id.*[7]

The distinction we have drawn between the right to cure default under § 1322(c)(1) and the right to redeem property under state law was recognized in *In re Sims,* 185 B.R. 853 (Bankr.N.D.Ala.1995). In *Sims,* the court determined that by passage of § 1322(c), Congress adopted a "bright line" time frame to cut off the right to cure, and had "supplanted State property rights with a national standard." *Id.* at 863. Judge Sledge noted that Congress' "bright line" foreclosure sale cut off was adopted from the Sixth Circuit formulation to that effect in *In re Glenn,* 760 F.2d 1428, 1435 (6th Cir.) *cert. denied* 474 U.S. 849, 106 S.Ct. 144, 88 L.Ed.2d 119 (1985), in which the court designated the cut-off date of the Chapter 13 statutory right to cure defaults as the foreclosure sale of the mortgaged premises. Notwithstanding the debtor's one-year statutory right of redemption from the date of the foreclosure sale under Alabama law, which survived as a property interest of the debtor, the *Sims* court held that debtor's opportunity to cure terminated upon foreclosure sale.

The legislative history of § 1322(c)(1) states in pertinent part:

> This section of the bill safeguards a debtor's rights in a chapter 13 case by allowing the debtor to cure home mortgage defaults at least through completion of a foreclosure sale under applicable nonbankruptcy law. However, if the State provides the debtor more extensive "cure" rights (through, for example, some later redemption period), the debtor would continue to enjoy such rights in bankruptcy.

H.R.Rep. 103–835, 103rd Cong., 2nd Sess. 52 (Oct. 4, 1994); 140 Cong.Rec. 10752–01, 10769 (Oct. 4, 1994) U.S.Code Cong. & Admin.News 1994 pp. 3340, 3361. A bright line cut-off of debtor's opportunity to cure default

at the point that the property is sold at foreclosure sale is wholly consistent with the survival of debtor's redemption opportunities under state law, where applicable.

With regard to the precise termination point of the right to cure, the statute provides that the curing opportunity is available until the residence is "sold at a foreclosure sale that is conducted in accordance with applicable non-bankruptcy law." Commentators have questioned whether the termination point is the date of the auction or some other point in the process, such as the date the deed to the property is conveyed.[8]

We believe the statute is ambiguous in this regard. On the one hand, the preposition "at" in the phrase "sold at a foreclosure sale" might signify the intention of Congress to situate the termination point at a defined and certain event, i.e. the foreclosure auction. On the other hand, the phrase "that is conducted in accordance with applicable non-bankruptcy law" modifies "foreclosure sale," and requires resort to state law to determine the procedural regularity of the actual sale. The term "sold" might refer to the process employed in each state to complete a foreclosure sale.

We accept the latter construction, i.e. that a "final" sale, as determined by applicable state law, controls as the termination point for the right to cure default under § 1322(c)(1), for several reasons. First, the legislative history confirms that a debtor may cure home mortgage defaults "at least through *completion* of a foreclosure sale under applicable non-bankruptcy law." H.R.Rep. 103–835, 103rd Cong., 2nd Sess. 52 (Oct. 4, 1994) U.S. Code Cong. & Admin. News 1994 pp. 3340, 3361; 140 Cong. Rec. 10752–01, 10769 (Oct. 4, 1994). (emphasis added). Second, other courts have construed the section in this way, including *In re Sims,*

---

7. Coincidentally, in New Jersey, in most cases, a property is deemed to be "sold at foreclosure sale" at the same point that a debtor's right of redemption expires, i.e., upon the delivery of the sheriff's deed ten days after the sheriff's sale. *See discussion, infra.*

8. One major treatise has remarked that "[i]n some states, a sale may not be deemed completed until the court has entered an order confirming the sale, or until a sheriff has conveyed the

property, or until a debtor no longer may redeem the property. It may well be significant that Congress did not say that the debtor may cure 'until the sale,' or 'until the date of the foreclosure sale,' indicating that the completion of the sale might be on a later date than the date of the auction.'" 5 LAWRENCE P. KING, *Collier on Bankruptcy,* ¶ 1322.14A at 1322–50 (15th ed. 1995).

185 B.R. at 866 (The cut-off point is the execution of the foreclosure deed, because "Alabama law treats the foreclosure sale as complete when the foreclosure deed is executed.") and *In re Jaar*, 186 B.R. 148, 154 (Bankr.M.D.Fla.1995) (The filing of the certificate of sale, rather than the acceptance of the high bid at the public bidding, marks the conclusion of the foreclosure sale under Florida law, and therefore serves as the termination point for curing default under § 1322(c)(1)). The question thus becomes what is a "final" sale under New Jersey foreclosure law.

■ Under New Jersey law, to foreclose on a mortgage, the mortgagee must file an action to foreclose upon the mortgage, N.J.S.A. § 2A:50–2, obtain a judgment of foreclosure and a writ of execution directing the sale of the mortgaged property, N.J.S.A. § 2A:50–36, and sell the property, through the sheriff or other authorized person, to the highest bidder. N.J.S.A. § 2A:50–37.[9] Pursuant to state court rule, the sheriff is directed to "deliver a good and sufficient conveyance" unless an objection is served upon him within 10 days after the sale or at any time before the deed is delivered. N.J. Court R. 4:65–5. The mortgagor is permitted to redeem within the ten-day period fixed by R. 4:65–5 for objections to the sale and until an order confirming the sale if objections are filed under the rule. *Hardyston Nat'l Bank v. Tartamella*, 56 N.J. 508, 513, 267 A.2d 495 (1970).[10]

Prior to September 15, 1948, although a "sale" occurred when the sheriff concluded the proceedings and determined the highest bidder, New Jersey property was not considered to be "sold" until the sale was confirmed. *Ghee v. Davenport*, 2 N.J.Super. 532, 535, 64 A.2d 902 (Ch.Div.), *aff'd* 4 N.J.Super. 518, 68 A.2d 284 (App.Div.1949) (discussing *Federal Title & Mortgage Guaranty Co. v. Lowenstein*, 113 N.J. Eq. 200, 166 A. 538 (Ch.Div.1933)) (a foreclosure sale is not final until confirmed by court order); *Vanderbilt v. Brunton Piano Co.*, 111 N.J.L. 596, 601, 169 A. 177 (E & A 1933) (accepting the *Lowenstein* determination); *Wootton v. Pollock*, 119 N.J.Eq. 128, 181 A. 172 (E & A 1935) (there was no sale until the sale process was judicially determined to be valid); and *Ryan v. Wilson*, 64 N.J.Eq. 797, 805, 53 A. 1039 (E & A 1902) ("the 'sale' reported to the court is not a perfect contract made by competent parties, but is a bargain dependent upon the approval of the court to render it 'valid and effectual in law' ").

On September 15, 1948, R.S. 2:65–12 was amended to provide for confirmation of foreclosure sales as directed under the state court rules. New Jersey law no longer requires the filing of a motion to confirm or an order of confirmation following a foreclosure sale. Instead, absent a proper objection filed with the sheriff within 10 days, pursuant to N.J. Court R. 4:65–5, the sheriff is permitted to transfer the deed to the purchaser. The court rule did not change common law, but rather "eliminate[d] the paperwork of a formal motion and order confirming a sheriff's sale which had become routine and of no practical value.... [T]he burden of going forward [was shifted] to the objector and obviated the entry of a formal order confirming the sale unless an objection was made to the sale." *Hardyston Nat'l Bank v. Tartamella*, 56 N.J. at 511, 267 A.2d 495.

In *Hardyston*, the New Jersey Supreme Court compared two earlier cases, *Ghee v. Davenport, supra*, and *Crane v. Bielski*, 27 N.J.Super. 448, 99 A.2d 526 (App.Div.1953) *rev'd on other grounds* 15 N.J. 342, 104 A.2d 651 (1954). In *Ghee*, in the context of granting a mortgagor's motion to redeem within ten days after a foreclosure sale and before delivery of a conveyance by the sheriff, the court noted that until the expiration of the ten-day period to object after the foreclosure sale, "the sale is incomplete." 2 N.J.Super.

---

**9.** New Jersey foreclosure law has recently been amended, effective December 4, 1995, with minimal impact on the issues raised here. *See* "Fair Foreclosure Act", N.J.S.A. 2A:50–53 *et. seq.* (1995). We note that N.J.S.A. § 2A:50–64 allows the sheriff two weeks to deliver the deed after sale.

**10.** It has been held that the filing of an objection to the foreclosure sale does not create an extended redemption opportunity beyond the ten day period after the sheriff's sale. *East Jersey Savings & Loan Ass'n v. Shatto*, 226 N.J.Super. 473, 481, 544 A.2d 899 (Ch.Div.1987).

at 535, 64 A.2d 902. By contrast, in *Crane,* the Appellate Division rejected a mortgagor's quest to redeem his property during the ten days following the foreclosure sale, reasoning that since court confirmation of a sale is not required, the rights of the parties are fixed at the time of sale. There is "no reason for holding that a sheriff's sale is not complete when made, subject only to the inherent power of the court to set aside the sale if sufficient cause be shown upon motion made within ten days of the sale." 27 N.J.Super. at 459, 99 A.2d 526.

*Hardyston* resolved the conflict in favor of the rationale expressed in *Ghee.* The Supreme Court specifically rejected the *Crane* formulation that since an order of confirmation of sale was no longer required, "it must follow that a sale is fully effective at once," stating that the *Crane* formulation "misconceived the impact of our rules." 56 N.J. at 511, 267 A.2d 495. Further, the Court juxtaposed two "legalisms" derived from earlier decisions, i.e., the concept that "the sheriff's sale is but an imperfect contract dependent ultimately upon the approval of the court," versus the concept that "a sale is defeasible only for some overriding equity, and if confirmed, the confirmation relates back to the date of sale," *Id.* at 513, 267 A.2d 495, and chose the former statement as a more accurate reflection of the post–1948 foreclosure process. Our reading of *Hardyston* strongly suggests that under New Jersey law, a sale is not "final" at the point of the fall of the gavel at the sheriff's sale. Rather, the point of finality is reached at the expiration of the ten-day period of objection and the conveyance of the sheriff's deed.

The New Jersey Supreme Court revisited the issue of the finality of a foreclosure sale, again in the context of redemption opportunities, in *Carteret Savings & Loan Ass'n, F.A. v. Davis,* 105 N.J. 344, 521 A.2d 831 (1987). In *Carteret,* the court reviewed previous case law on judicial sales as follows:

> Originally, a judicial sale was not considered final . . . until the purchaser complied with the conditions of the sale and the sale was confirmed. If the purchaser failed fully to comply, the mortgagor's equity of redemption was restored. *Ghee v. Daven-*

*port,* 2 N.J.Super. 532 [64 A.2d 902] (Ch. Div.), aff'd, 4 N.J.Super. 518 [68 A.2d 284] (App.Div.1949). This was the prevailing practice in New Jersey. The practice was modified by a Rule revision in 1948 that made the judicial sale the final event but gave the debtor or anyone with an interest in the property ten days to object to the confirmation of the sale. 1948 *Rule 3:77–5* (now R. 4:65–5).

This was the background that faced the Court at the time of the *Hardyston* decision. The Court concluded that the debtor should have the further opportunity to redeem the property within the ten days between the sale and its becoming final. *Id.* 105 N.J. at 348–49, 521 A.2d 831. The reflection of the New Jersey Supreme Court, reaffirmed in *Carteret,* appears to be that a judicial sale is final when the sheriff conveys the deed, at the expiration of the ten-day period to object.

In other New Jersey cases, it has been recognized that a sheriff is forbidden from conveying title to land purchased at a foreclosure sale until at least ten days after such sale, *Little Falls Savings & Loan Ass'n v. Chas. O. Holmberg & Sons, Inc.,* 165 N.J.Super. 93, 96, 397 A.2d 717 (Ch.Div.1978), that the rights of a successful bidder at a foreclosure sale are "inchoate until the sale is confirmed or until ten days after the sale if no objections to the sale are filed," *Id.* (citing 30 N.J. Practice (Cunningham and Tishler, Law of Mortgages) § 358 at 295–296 (1975)), and that legal title does not vest in the purchaser until delivery of the deed. *Union County Savings Bank v. Johnson,* 210 N.J.Super. 589, 594, 510 A.2d 288 (Ch.Div. 1986).

To be distinguished here is the case of *Porreca v. LaFerriere,* 225 N.J.Super. 590, 543 A.2d 102 (App.Div.1988). In the context of rejecting the contention of a successful purchaser that a sheriff who conducts a mortgage foreclosure sale and executes a sheriff's deed may be responsible to pay the realty transfer tax required under N.J.S.A. 46:15–7, the Appellate Division affirmed the trial court's decision that the sheriff is merely performing a ministerial function in conveying the deed. The court explained that in

the context of a judicial sale, a sheriff acts as an agent of the court. "The sheriff's deed does not convey any title of the sheriff. The purchaser at the sale is regarded as purchaser from the date of the foreclosed mortgage and not from the date of the sheriff's deed." *Id.* at 593, 543 A.2d 102.

We find no inconsistency between the *Porreca* language and our conclusion that a judicial foreclosure sale is "final" in New Jersey on the date the deed to the property is conveyed by the sheriff. That the sheriff's actions are ministerial is manifest. "The sheriff in performance of his official duties can make no representations as to the existence, amount, or validity of any liens or encumbrances on the mortgaged premises and cannot warrant the nature and extent of any structures." Myron C. Weinstein, *A Pragmatic, Legal and Historical Overview: Foreclosure and Deficiency Actions in New Jersey,* 118 N.J.L.J., Dec. 11, 1986, at p. 26. [hereinafter *"Foreclosures"*]. The sheriff simply executes and delivers a deed to the successful purchaser. Notwithstanding the ministerial nature of the function, it is beyond debate that legal title to the property passes to the successful purchaser only upon the conveyance of the deed. *Union County Savings Bank v. Johnson, supra.* As well, as we noted above, the *Hardyston* court rejected the "legalism" adopted by earlier cases that the date of the conveyance of the deed relates back to the date of the sheriff's sale. 56 N.J. at 513, 267 A.2d 495.

Nor is the *Porreca* explanation that a successful purchaser is regarded as purchaser from the date of the foreclosed mortgage inconsistent with the concept of finality of the judicial sale at the point of deed delivery. We understand the statement to mean that the interest acquired by a successful purchaser at a judicial sale will be subject to all encumbrances and interests existing on the property at the time of the execution of the mortgage. *Foreclosures* at p. 25. There is no correlation between the nature of the interest actually acquired by the successful purchaser at a foreclosure sale and a deter-

mination regarding the point of finality or completion of the foreclosure sale process.

In New Jersey, at a judicial sale, the successful bidder is required only to deliver a deposit of between 10 and 20 percent of the bid price, depending upon the local practice in each county, with the balance to be paid in cash or certified funds prior to deed delivery. *Foreclosures* at p. 25.[11] Under N.J.S.A. 2A:61–16, a successful bidder has the opportunity to be relieved of his bid by the court "before delivery of the [sheriff's] deed" if there are undisclosed encumbrances and substantial title defects. As we have noted, the debtor retains the opportunity to object to the sale for at least ten days before the conveyance of the deed. R. 4:65–5. The successful purchaser acquires legal title only upon the actual delivery of the deed.

Based on the foregoing, we conclude that a New Jersey foreclosure sale is complete when the sheriff delivers the deed to the successful purchaser. Therefore, in New Jersey, under § 1322(c)(1), a Chapter 13 debtor may cure a default and reinstate a residential mortgage, following the entry of a foreclosure judgment and the conduct of a sheriff's sale, until the actual delivery of a sheriff's deed to the successful purchaser.

In this case, debtor filed her Chapter 13 petition on the same day that the sheriff's deed was issued. To resolve the factual issue remaining, i.e., which event occurred first, the case is scheduled for further hearing on **Wednesday, February 28, 1996 at 3:00 p.m.**

---

11. N.J.S.A. § 2A:50–64, as amended, now requires a twenty percent deposit in cash or certified funds immediately upon the conclusion of the foreclosure sale.