CHARLES D. THOMPSON

*v.*

REBECCA E. R. RAMSEY.

[Submitted December 27th, 1906. Decided April 16th, 1907.]

Pending a foreclosure a receiver appointed by this court, and with the approbation of this court, made a lease of the mortgaged premises, expiring October 8th, 1904. The mortgaged real estate was sold by the sheriff to Carr for $70,000. Carr paid $5,000 to the sheriff upon the purchase. The sale was confirmed July 5th, 1904. On July 26th, 1904, the sheriff executed a deed to Carr, and notified him that it was ready for delivery. Carr did not pay the remainder of the purchase price and take the deed until September 17th, 1904, when he paid $65,000 only. On application for the distribution of the rents collected by the receiver—*Held,* that Carr was not entitled to any part of the rents attributable to the real estate mortgaged until after he had performed the conditions of sale and accepted the sheriff's deed.

On bill to foreclose. Application for distribution of surplus moneys.

*Messrs. Godfrey & Godfrey,* for Charles R. Myers, defendant.

*Mr. William M. Clevenger,* for Showell & Fryer, defendants.

*Messrs. Bourgeois & Sooy,* for John H. Carr, purchaser.

MAGIE, CHANCELLOR.

It appears, from the depositions taken, that under a decree in this cause, mortgaged real estate (consisting of the Hotel Shelburne) was sold by the sheriff on the 4th of June, 1904, for $70,000. There were prior mortgages upon the property, alleged to amount to $223,000 of principal. The purchaser at the sale was Joseph H. Carr, who paid to the sheriff $5,000 on the day of sale. Exceptions to the confirmation of the sale were interposed, and pending their consideration, a receiver of the property

was appointed by order of the court, who, with the approval of the court, leased the mortgaged property for a term commencing on the 30th day of June, 1904, and ending on the 8th day of October, 1904, for a rent of $13,750. The sale was confirmed July 5th, 1904. On July 26th, 1904, the sheriff executed a deed to Carr for the mortgaged real estate and notified him that the deed was ready for delivery. The balance of the purchase price, viz., $65,000, was not paid by Carr until September 17th, 1904, and then it was paid without any accrued interest. After deducting the expenses of the receivership, and other incidental expenses, there remains in the hands of the receiver, out of the rental money, $12,204.25, and it is the distribution of this sum which is now sought.

The mortgage foreclosed covered real and personal property. The personal property was the furniture contained in the hotel. This was not sold by the sheriff, because the sale of the real estate was ordered to be made first, and that sale produced more than enough to satisfy the mortgage of the complainant. The lease included the hotel and all its furniture. The rents which were received were due in part to the real estate, and in part to the personal property leased. It becomes necessary to determine what portion of the rents remaining is properly to be attributed to one kind of property, and what to the other kind included in the lease. This becomes necessary because the purchaser of the real estate claims that the rents attributable to the real estate, or at least some part thereof, should be paid to him. There is also a judgment entered upon a mechanics' lien upon the real estate, which can only be paid out of the rents which are attributable to the real estate. As there are also subsequent mortgages which include, or claim to include, both real and personal property, it is obviously necessary to make this discrimination with respect to the rents.

Unfortunately, the evidence leaves this question without much to enable the court to reach a satisfactory conclusion. On one hand, it is claimed that the value of the personal property is less than $12,000, and that the value of the real estate, as indicated by the amount received at the sheriff's sale, subject to previous mortgages, is about $300,000, and it is insisted that the

rents remaining should be proportioned in the ratio which the respective values bear to each other. The valuation of the personal property appears, by the testimony, to be made by a single witness, and it does not seem to be in accord with testimony as to the cost of the furniture and the annual depreciation from the use thereof. On the other hand, it is insisted that real estate, rented, depreciates but little in value if repairs are properly made, while personal property of the nature of this does depreciate quickly and largely in value by reason of its use. There is but a single expert who presents this opinion, but it seems to be in accord with reason. The same expert testifies to the fact that, in Atlantic City, owners of cottages sometimes unite with the owners of furniture, which the latter use in furnishing the cottages for renting, and that in such cases the rents are divided equally between the owner of the real estate and the owner of the personal property. No other witness has been called to express such an opinion, or to indicate such a custom. There is no proof that the custom testified to in renting cottages would be applicable to the renting of large hotels.

This leaves me in perplexity. I have so little to rely upon in making an adjudication as to the equitable division of this fund, that I am inclined to fall back upon a division to be arrived at by a comparison of the value of the real with the value of the personal property.

But, I am not satisfied to fix the value of the personal property at the figure named by the expert witness. According to a calculation made from the cost of the furniture, with the expert's evidence of the yearly depreciation, I think that the value may be fairly fixed at $30,000, so that if the real estate is deemed to be worth $300,000, the rents in hand are attributable thus: ten-elevenths to the real estate and one-eleventh to the personal property.

It is next to be determined how these respective amounts are to be distributed among the claimants. First, to whom shall the amount of rents raised from the real estate be paid? The purchaser at the sheriff's sale claims them because he has a sheriff's deed for the leased real estate, dated July 26th, and he insists that his title thereby became perfect as of the date of the sale,

which was June 4th. Subsequent mortgagees and lien claimants insist that the purchaser is not entitled to any part of the rents which accrued from the real estate, unless it be that which accrued after September 17th, when he paid the balance of the purchase-money, or that if he is entitled to the whole thereof, he should not be allowed to take the same, except upon accounting for a fair rate of interest upon the purchase-money retained by him from July 26th, when he was notified that the deed was ready for delivery, until September 17th, when he paid the same.

The contention of counsel for the purchaser at the sheriff's sale is that the title the purchaser acquired by the sheriff's deed relates back to the date of the sale at which he became the purchaser. The appeal is to the doctrine of relation, which is described by Lord Mansfield, in *Vaughn* v. *Atkin, 5 Burr. 2764,* in this language: "There is no rule better founded in law, reason and convenience than this, that all the several parts and ceremonies necessary to complete a conveyance shall be taken together as one act, and operate from the substantial part by relation. The formal effectuates the substantial part, and therefore must relate to it."

This definition of Lord Mansfield was treated as expressing the same idea as the definition contained in *18 Vin. Abr.* § *8, tit. "Relation,"* and such was the view expressed by Chief-Justice Ewing in the supreme court in *Den* v. *Steelman, 10 N. J. Law (5 Hal.) 193.* The principle was applied in the court of errors and appeals in *Jacobus* v. *Mutual Benefit Life Insurance Co., 27 N. J. Eq. (12 C. E. Gr.) 604,* where a mortgage recorded before delivery was held to become effectual as against lien claims for labor, &c., upon a building commenced after the mortgage was recorded, but before it was delivered; and this was said to be upon the doctrine that deeds, when delivered, have operation by relation as of a time prior to delivery, if it be necessary to effect the intention of the parties, and be required for the advancement of justice, and Mr. Justice Depue, in delivering the opinion of the court, points out that the equity of the mortgagee was plainly prior to the equity of the lien claims.

But the question before us differs materially from that discussed and decided in the matter last cited. In this case there

was a decree for the sale of real and personal property to raise money to satisfy a mortgage encumbrance. It was not a decree of strict foreclosure, which is said to be an alienation, but it was a decree for sale, and the defendants were not foreclosed by such a decree until sale. *Pearman* v. *Gould, 42 N. J. Eq. (15 Stew.)* 4. The sale is to be made by an officer of the court, and must be confirmed by the court, and the title passes by a deed executed by the officer.

As was said by Chief-Justice Ewing, in *Den* v. *Steelman, supra,* with respect to sheriff's sales under common law judgments in this state, the execution and delivery of the deed of the sheriff is the substantial part. In the language of Lord Mansfield, all the rest of the transaction must relate thereto, and the chief-justice distinguished the cases in which the doctrine of relation was properly applied, such as where the person making the conveyance has an estate in the lands, from those cases where the conveyance is made by one having no estate but only a power. In such cases, he held that an estate does not pass until all the acts requisite thereto are completed, and from the last to the first there is no relation so as to sustain an intermediate transfer. The reasoning of the chief-justice is entirely applicable to the case of the delivery of a deed by a sheriff to effectuate a sale made by him under a decree of this court, and I should not have the least difficulty in adopting the view that the sheriff's deed delivered to Carr on the 17th of September, had no relation to the sale on the 4th of June, so as to entitle him to the rents and profits intermediate between the sale and the delivery of the deed, except for the fact that Mr. Justice Depue, in delivering the opinion of the court of errors and appeals, in *Morse* v. *Hackensack Savings Bank, 47 N. J. Eq. (2 Dick.) 279,* expressed the view that a sheriff's deed, when delivered, had a relation back to the time of the sale of which it is the consummation, and he cited, in support of that doctrine, the case of *Jacobus* v. *Mutual Benefit Life Insurance Co., ubi supra.*

But an examination of the case of *Morse* v. *Hackensack Savings Bank* clearly shows that the view thus expressed was wholly unnecessary to its decision. The doctrine of that case was this: that although heirs-at-law took an estate which was alienable,

devisable and descendible, and liable to be seized and sold, in lands respecting which their ancestor had, by will, given power to his executors to sell, yet that a purchaser, under execution, of the estate of an heir would be devested of the estate purchased, whenever the power of sale was exercised, and the purchaser, under the power, would become seized, under the devisor, of a title paramount to the title of the heir by descent. It is obvious that, in the view thus expressed by the court, it was immaterial whether the deed of the sheriff which was claimed to pass the title of an heir-at-law, passed that title as of the date of sale or as the date of the delivery of the conveyance.

I have therefore reached the conclusion that Carr, the purchaser, acquired by the delivery of the deed no right in the rents received from the receiver's lease prior to the 17th of September. Whether he can enforce the payment of rents accruing thereunder after the 17th of September might, perhaps, be questioned, but it seems conceded by all the counsel that he is entitled to the rents between that date and October 8th, when the lease terminated. The evidence as to the rental value for that period is meagre, but it also seems to be conceded that at the rate of $20 a day, testified to by one of the experts, the sum of $420 would be due to the purchaser. That sum should be paid out of the amount attributable to the real estate in the above calculation.

When that sum is deducted, there will remain a residuum of the rents received by the receiver, which are attributable to the real estate, and the whole of the rents which are attributable to the personal estate.

The proceeds of the sale of the real estate by the sheriff was sufficient to pay the prior encumbrance of the complainant, and to produce a surplus of over $40,000, which was applied upon a subsequent mortgage held by one Charles R. Myers. The sum thus applied, did not, however, pay the whole amount due him, but left unpaid a considerable sum. The remainder of the fund in the receiver's hands should be next applied to the unpaid claim of Myers upon his mortgage. As the remainder is composed of money derived from the real estate and money derived from the personal property, I think that each part of the remaining fund should contribute to the payment of Myers' deficiency in propor-

tion to its amount. The reason for this is, that there is one subsequent encumbrance covering the real estate alone, and there are subsequent encumbrances covering the real estate and which are also claimed to cover the personal property. Whether the remaining rents attributable to the personal property are properly to be applied to the Myers deficiency (if there remain any deficiency after the application of the rents attributable to real estate) will be considered hereafter.

If the rents attributable to real estate and applicable to the payment of the deficiency on the Myers mortgage, when so applied, leave a surplus to be applied to subsequent encumbrances, then the next encumbrance to which it should be applied is the judgment upon a mechanics' lien which, though subject to the Myers mortgage, is, by the judgment of the circuit court, a prior lien to the three next succeeding mortgages. At all events, the lien claim thus put in judgment is entitled to be next paid, but it must be paid from the fund raised from the rents attributable to the real estate alone. If there then remain some part of the rents attributable to real estate, it must be applied to subsequent encumbrances.

One of the subsequent encumbrances is a mortgage covering the same real and personal property, and, perhaps, other personal property, which was executed to one Edward B. Showell, for the benefit of a firm called Showell & Fryer. The interest of the mortgagee in this mortgage does not seem to be affected by the judgment upon the lien claim. Showell was made a party to the lien proceeding, but it was afterward discontinued as to him. The mortgages of John Wanamaker, Samuel E. Keers and Walter R. Lewis, who were made parties to the lien proceeding, were expressly adjudged therein to be subject to the lien claim.

In behalf of Showell, it is contended that the lien claimant ought to have made him a party to the lien proceeding and procured a judgment fixing the priority of the lien and his mortgage, under the provisions of the Mechanics' Lien act, supplement of 1884 (*2 Gen. Stat. p. 2072*), and of the revised Mechanics' Lien act of 1898 (*P. L. 1898 p. 547*), which require the summons to be issued against every person holding a mort-

gage of record against the lands which would be cut off by a sale under the lien claim. His insistence is that by the discontinuance of the proceeding as to him, and the failure to include in the judgment a fixing of his priority, his mortgage has been advanced above those of Wanamaker, Keers and Lewis, which were expressly adjudged to be subject to the lien claim.

I am unable to agree with the view contended for, or with the conclusions sought to be drawn therefrom, viz., that his mortgage thereby was within the doctrines of *Clement* v. *Kaighn, 15 N. J. Eq. (2 McCart.) 47,* and *Hoag* v. *Sayre, 33 N. J. Eq. (6 Stew.) 552.* The legislation which now requires a mortgagee, whose mortgage would be cut off by a sale upon a lien claim, to be made a party to the lien claim proceeding, does not prescribe what will be the effect of a failure to do so. It does not advance the omitted mortgage over the lien claim or over other mortgages. It results that the contention made in behalf of the Showell mortgage cannot avail the mortgagee. If any of the fund attributable to the real estate remains after payment of the lien claim, the surplus should be applied to the three mortgages of Wanamaker, Keers and Lewis, in order of priority, which will doubtless exhaust the whole of that part of the fund.

The only question remaining is as to the disposition of so much of the fund as was raised by the lease of the personal property. By a cross-bill in the foreclosure of *Myers* v. *Ramsey,* and in other modes, all the mortgages are attacked with respect to their being liens upon personal property. The contention is that they were not recorded in the manner required by law. I think that every one of the mortgages in question has failed to become a lien as against other mortgagees or purchasers in good faith.

The mortgage of Charles R. Myers was recorded as a real estate mortgage on October 11th, 1900. The affidavit to the chattel mortgage was made October 15th, and it was recorded on October 29th, 1900. The affidavit did not truly state the consideration of the mortgage, and the mortgage was not recorded within a reasonable time.

The mortgage of John Wanamaker was recorded as a real estate mortgage on October 15th, and although the affidavit was made on the same day, it was not recorded as a chattel mort-

gage until October 20th, 1900. This affidavit was made by an attorney-at-law, who was the attorney of Wanamaker, and he declares therein that the true consideration of the mortgage was for goods, wares and merchandise sold and delivered by Wanamaker to Rebecca Ramsey. It would seem that his knowledge must necessarily have been acquired from information derived from others. The attorney, when called as a witness, admitted that the only knowledge he had of the transaction was derived from a conversation with an agent of Wanamaker. Besides, the mortgage was not recorded as a chattel mortgage within a reasonable time.

The mortgage of Keers is defective as a chattel mortgage because, although the affidavit was taken upon the 15th of October, it was not recorded until the 31st of October, 1900.

The mortgage of Showell and Fryer is also defective because, although dated December 15th, 1900, and recorded as a real estate mortgage on January 19th, 1901, the affidavit thereto was made December 3d, 1902, and it was recorded as a chattel mortgage December 8th, 1902. *Graham Button Co.* v. *Spielmann, 50 N. J. Eq. (5 Dick.) 120; S. C., 50 N. J. Eq. (5 Dick.) 796; Roe* v. *Meding, 53 N. J. Eq. (8 Dick.) 350; Dunham* v. *Cramer, 63 N. J. Eq. (18 Dick.) 151; Watson* v. *Rowley, 63 N. J. Eq. (18 Dick.) 195; Knickerbocker Trust Co.* v. *Penn Cordage Co., 65 N. J. Eq. (20 Dick.) 181.*

This review indicates that every one of these mortgages fails to be effective as against *bona fide* purchasers or mortgagees in good faith. But they are effective as against Mrs. Ramsey. It is suggested in the briefs that the Hotel Shelburne Company may hold the personal property in the hotel as a purchaser free from these mortgages. But it appears that the deed from Mrs. Ramsey to the Atlantic Title Company, trustee, dated July 12th, 1891, gave notice of these mortgages as being encumbrances on the personal property in question. The deed from the Atlantic Title Company, the trustee to the Hotel Shelburne Company, recites the former conveyance as the source of the title conveyed, and therefore the hotel company became a purchaser with like notice.

It follows, therefore, that the mortgages are effective also

against the purchaser from Mrs. Ramsey, and they stand in the order of the priority of date so far as they affect personal property. Whatever remains of the fund raised from the rents of the personal property must be distributed among them until it is exhausted, in the order of such priority.

The opinion thus expressed disposes of the other case above named, arising upon the bill of Charles R. Myers and the cross-bill attacking the various mortgages, and a decree in that case would be made upon the lines of this opinion. As Myers' claim may be wholly discharged by the distribution in this cause, there can be no action taken or decree made with reference to the personal property, none of which appears to have been sold.

As this appears to be analogous to an application for surplus money in court, I think the costs of the proceeding should be taken from the fund before distribution is made.