In re James M. DOWNING and Ella D. Downing, Debtors.

Bankruptcy No. 96–36604.

United States Bankruptcy Court, D. New Jersey.

Aug. 27, 1997.

Fein, Such, Kahn & Shepard, P.C., Vincent DiMaiolo, Jr., Parsippany, NJ, for Ford Consumer Finance Company, Inc.

Law Office of Arthur E. Swidler, Arthur E. Swidler, Trenton, NJ, for Debtors.

## OPINION

WILLIAM H. GINDIN, Chief Judge.

### PROCEDURAL HISTORY

This matter comes before the court as a motion for reconsideration of an order entered on December 17, 1996, denying the motion of Ford Consumer Finance Company ("Ford") for relief from the automatic stay pursuant to 11 U.S.C. § 362(d). Ford, as the mortgagee on the residence of James M. Downing and Ella D. Downing (cumulatively, the "debtors") seeks relief challenging the debtors' opportunity to cure an arrearage on their home mortgage under 11 U.S.C. § 1322(c)(1) following a foreclosure sale.

This court finds, for the reasons set forth below, that the debtors may cure their default and reinstate their residential mortgage until the actual delivery of a sheriff's deed to the successful purchaser.

This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and the Standing Order of Reference by the United States District Court for the District of New Jersey, dated July 23, 1984. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(G), (L) and (O).

### FACTS

Ford is the holder of a first mortgage on the debtors' residence located at 632 North Olden Avenue, Trenton, New Jersey ("residence") which secures a promissory note in the original principal amount of $40,153.59. In February of 1995, after the debtors defaulted in payment on the note, Ford commenced a foreclosure action. The debtors filed their first chapter 13 petition on May 16, 1995. Ford moved for relief from the automatic stay to proceed with its foreclosure action and such relief was granted on September 19, 1995. A final judgment of foreclosure in the amount of $45,528.86, plus interest and fees was issued in the State Court proceedings on January 12, 1996.

This case was dismissed on November 30, 1995.

The debtors filed a second chapter 13 petition on February 21, 1996. That case was dismissed on March 14, 1996 for failure to file the necessary schedules and a chapter 13 plan of reorganization. The Sheriff of Mercer County conducted an auction sale on July 24, 1996, at which Ford was the successful bidder. The debtors commenced the instant chapter 13 case on July 31, 1996, during the ten (10) day period in which the debtors could exercise their right of redemption under N.J. Court Rules, 1969, R. 4:65–5. The deed to the residence was not delivered to Ford due to the intervention of the automatic stay under 11 U.S.C. § 362(a).

On November 18, 1996, Ford filed a motion for relief from the automatic stay asserting that the debtors were in arrears for five (5) payments in the cumulative amount of $2,640.10. During the January 14, 1996 hearing, the debtors represented to the court that they had available funds in the amount of $2,160.00 to apply against their debt. The court denied Ford's motion for relief from the automatic stay and ordered Ford to accept the debtors' payment and ordered the debtors to make a double payment in January of 1997 to cure their post-petition default. The court further ordered the debtors to provide a thirty (30) day default clause in their chapter 13 plan of reorganization along with a provision to pay outstanding attorneys' fees and costs. Ford filed the instant motion for reconsideration on December 27, 1997. A hearing was conducted on January 21, 1997. The court reserved decision after argument. On January 14, 1997, during the pendency of the instant motion for reconsideration, the debtors' chapter 13 plan of reorganization was confirmed.

The debtors interpret 11 U.S.C. § 1322(c)(1) to permit them to cure their delinquencies and to reinstate their mortgage under other applicable provisions of § 1322. They contend that a judicial foreclosure sale

in New Jersey is not deemed as final until the date the deed is conveyed by a sheriff.

Ford rejects this reasoning and asserts that the plain language and legislative intent of § 1322(c) provides that the debtors' right to cure terminates on the date the sheriff declares that the property is sold at a foreclosure auction. Ford suggests that under New Jersey law, the debtors can only defeat a sale by exercising their right of redemption of the entire debt owed within ten (10) days after the auction or with a sixty (60) day extension by operation of 11 U.S.C. § 108(b) if a bankruptcy case is filed before the expiration of the original exemption period. Ford states that the right of redemption is distinguished from a right to cure and such a redemption period does not provide a debtor with the ability to reinstate a mortgage under § 1322(b).

### DISCUSSION

#### A. Origin of 11 U.S.C. § 1322(c)(1)

In pertinent part, 11 U.S.C. § 1322(c)(1) provides:

> [a] default with respect to, or that gave rise to, a lien on the debtor's principal residence may be cured [1] under paragraph (3) or (5) of subsection (b) until such residence *is sold at foreclosure sale* that is *conducted in accordance with applicable nonbankruptcy law.*

11 U.S.C. § 1322(c)(1)(emphasis added). Section 1322(c)(1) was included in the Bankruptcy Reform Act of 1994 to clarify the types of home mortgage defaults that could be cured under a chapter 13 plan. H.R. REP. NO. 103–835, 103rd Cong., 2nd Sess 52 (Oct. 4, 1994), U.S. Code Cong. & Admin. News 1994 at pp. 3340, 3360.; 140 CONG. REC. H10,769 (Oct. 4, 1994) Until the Third Circuit's decision in *Matter of Roach,* 824 F.2d 1370 (3d Cir.1987), all of the Federal Courts of Appeal had held that such a right to cure continues up until the time of a foreclosure sale. *Id.* (citing *In re Glenn,* 760

---

**1.** A "cure" under § 1322(c)(1) is defined as the satisfaction of a default over time. *In re Sims,* 185 B.R. 853, 863 (Bankr.N.D.Ala.1995). A redemption, on the other hand, refers to a right to pay an entire debt with interest, after a default

and prior to the consummation of a foreclosure. GRANT S. NELSON & DALE A. WHITMAN, REAL ESTATE FINANCE LAW § 7.1 (2d ed.1985).

F.2d 1428 (6th Cir.1985), *cert. denied,* 474 U.S. 849, 106 S.Ct. 144, 88 L.Ed.2d 119 (1985); *Matter of Clark,* 738 F.2d 869 (7th Cir.1984)). *Matter of Roach* decided that a debtor's right to cure was extinguished at the time of the foreclosure judgment, which occurs in advance of the foreclosure sale. *Id.* Congress determined that this decision was "in conflict with the fundamental bankruptcy principal of allowing a debtor a fresh start through bankruptcy" and thus enacted this subsection. *Id.* (citing remarks of Rep. Jack Brooks).

As stated above, § 1322(c)(1) provides that a default on a mortgage against a debtor's residence may be cured until the property is "sold at [a] foreclosure sale" conducted in accordance with state law[2]. 11 U.S.C. § 1322(c)(1). The legislative history suggests that the debtor may cure a residential mortgage default "at least through *completion* of a foreclosure sale under applicable nonbankruptcy law." 140 CONG. REC. 110,-769 (daily ed. October 4, 1994)(remarks of Rep. Jack Brooks)(emphasis added). Thus, the statutory language and the legislative history defer to state law to answer the question concerning the time at which the foreclosure sale has been completed.

Although the addition of § 1322(c)(1) was intended to establish clear guidelines as to the termination of a debtor's right to cure a default on a home mortgage, the conflicting decisions in the district of New Jersey alone indicate that although this may have been Congress' intent, such was not the result.

### B. *Survey of Caselaw*

The bankruptcy courts in the district of New Jersey are split in their interpretation of this subsection. Four cases have held that a foreclosure proceeding conducted in accordance with New Jersey law terminates a debtor's right to cure a mortgage when the hammer goes down at the time of the auction sale. *In re Ziyambe,* 200 B.R. 790 (Bankr.

D.N.J.1996); *In re Little,* 201 B.R. 98 (Bankr.D.N.J.1996); *In re Simmons,* 202 B.R. 198 (Bankr.D.N.J.1996); *In re Hric,* 208 B.R. 21 (Bankr.D.N.J.1997). By contrast, two other courts have decided that a chapter 13 debtor may cure and reinstate a residential mortgage until the actual delivery of a sheriff's deed to the successful purchaser. *Matter of Ross,* 191 B.R. 615 (Bankr.D.N.J. 1996); *In re Macavia,* No. 95–34118 (unpublished)(Bankr.D.N.J.1995). In the instant case Ford urges reasoning under the *Ziyambe* line of cases and the debtors argue that the *Ross* progeny is apposite.

In *In re Ziyambe,* the debtors defaulted on their home mortgage and the property was auctioned at a foreclosure sale. *In re Ziyambe,* 200 B.R. at 791. On the day immediately following the auction, the debtors filed a Chapter 13 petition and sought to cure the default under their Chapter 13 plan. *Id.* The court determined that the debtors' right to cure terminated at the completion of the auction sale relying on its interpretation of the legislative history of the subsection and New Jersey foreclosure law.

In its examination of the legislative history of § 1322(c)(1), the court reviewed caselaw and Congressional testimony and decided that the 1994 Reform Act had codified cases which adopted a "bright line" test to cut off the right to cure at the time of the auction sale. *Id.* at 798. The court relied on the analysis in *In re Sims,* 185 B.R. 853 (Bankr. N.D.Ala.1995), which held that although a court is compelled to rely on state law to determine when property is *sold* at a foreclosure sale, it does not need to analyze the state property rights of a debtor in property to determine whether a *cure* is available. *Id.* at 798. The *Sims* court concluded that for chapter 13 purposes, the variations of the "laws of different states to govern the effect of an acceleration and its curability" would defeat Congress' preemptive bankruptcy powers to provide a "uniform national reme-

---

2. Federal foreclosure law does not exist. The Rules of Decision Act, 28 U.S.C. § 1652 states in pertinent part that, "[t]he laws of the several states, except where the Constitution or treaties of the United States or Acts of Congress otherwise require or provide, shall be regarded as rules of decision in civil actions in the courts of the United States, in cases where they apply." Therefore, this court must examine state law to determine when residential property is sold at foreclosure sale. *See also, West End Assoc. v. Sea Green Equities,* 166 B.R. 572, 578 (D.N.J. 1994)(state law provides the authority for a foreclosure sale).

dy to adjust the debts of individuals" as an alternative to a chapter 7 liquidation. *Id.* (quoting *In re McKinney,* 174 B.R. 330, 336 (Bankr.S.D.Ala.1994)).

The *Ziyambe* court reviewed the floor comments of Senator Grassley to support its finding that Congress intended that property would be deemed as sold at the time of the foreclosure sale, "... [§ 1322(c)(1) ] will preempt conflicting State laws; and permit homeowners to pre[s]ent a plan to pay off their mortgage debt until the foreclosure sale actually occurs." *Id.* (citing 140 CONG. REC. § 14462 (daily ed. October 6, 1994))(statement of Sen. Grassley).

The court also examined New Jersey state law and found that it did not believe that Congress intended to introduce "inherent uncertainty into the foreclosure process" by promoting a county to county determination as to whether a property is sold. *Id.* Since the New Jersey is based on a system where delivery of a sheriff's deed confers the transfer of property, a homeowner's rights are subject to the workload and staffing considerations in any given month. *Id.* Further, a sheriff serves only a "ministerial function" in delivering the deed and "does not" affect the substantive rights of the parties under state law. *Id.* (citing *Porreca v. LaFerriere,* 225 N.J.Super. 590, 591, 543 A.2d 102, 104 (App. Div.1988)(a sheriff performs ministerial function when a deed is transferred for recording and holds no liability for attendant realty transfer fee)). Thus, the court concluded that fixing the cure deadline to the day of the sheriff's sale under § 1322(c)(1) would eliminate the determination of a mortgagor's curative rights upon administrative concerns and establish a more concrete and uniform guideline. *Id.*

Similar reasoning can be found in the decision of the bankruptcy court in *In re Simmons.* While in agreement that the meaning of the subsection is not readily discerned from its text, the court found that the modification of the term "foreclosure sale" by the phrase "conducted in accordance with applicable bankruptcy law" refers to the event of the sale. *In re Simmons,* 202 B.R. at 200. In its analysis, this court relied on the House

Report and Senator Grassley's comments as seminal sources in its construction. *Id.* at 201. It also gave credence to the phrase "foreclosure sale" as a legal term of art to be construed in its customary sense. *Id.* at 202. The *Simmons* court further concluded that the establishment of the day of the sale as the termination date "fulfills the dual policies that underlie the [sub]section;" it affords a debtor the opportunity to retain a residence by filing a chapter 13 petition and plan to cure arrears in addition to the creation of a uniform termination date for lenders. *Id.* at 203. Lastly, the court noted that its interpretation is consistent with New Jersey law which recognizes that equitable title to real property in a foreclosure setting is transferred upon conclusion of the auction sale. *Id.* at 204. Accordingly, the *Simmons* court held that a debtor's right to cure through a chapter 13 plan terminates upon the date the mortgaged property is auctioned off to the highest bidder. *In re Little* followed *Simmons* opining that the phrase "sold at foreclosure sale" in § 1322(c)(1) refers to the sheriff's auction. *In re Little,* 201 B.R. at 107.

In *In re Hric,* the court agreed with the *Simmons* analysis declaring that the phrase "conducted in accordance with applicable nonbankruptcy law" modifies the term "foreclosure sale" which simply requires that the sale be conducted in a procedurally correct manner. *In re Hric,* 208 B.R. at 25. Thus, the court's interpretation of "sold at foreclosure sale" was examined relying on the language of N.J. Court R. 4:65–5 [3] which repeatedly refers to the event of the auction as the "sale" and distinguishes the "sale" from "delivery of the deed". *Id.* Accordingly, the court held that the sheriff's sale as the termination date to cure a default.

While this court is mindful of the arguments set forth in *Ziyambe, Simmons, Little,* and *Hric,* it respectfully chooses instead to follow the reasoning of in *Matter of Ross,* 191 B.R. at 615, the first of the published opinions within this district to address the meaning of § 1322(c)(1). In *Ross,* the court found that a debtor's right to cure a default and

---

**3.** The text of N.J. Court R. 4:65–5 is discussed    infra, at pp. 464–65.

reinstate a mortgage terminates upon the actual delivery of the sheriff's deed to the successful purchaser. *Id.* at 621.

First, the court distinguished the rights of a debtor to cure a default under § 1322(c)(1) from the right of redemption held by a mortgagor under state law. *Id.* at 617–18. The *Ross* court noted that a debtor's right to cure a default under § 1322(c)(1) terminates when the property is "sold at foreclosure sale.". *Id.* (citing *Matter of Roach*, 824 F.2d at 1372, n. 1)[4]. On the other hand, the debtor's state law right of redemption, to the extent that it exists when a bankruptcy petition is filed, extends for sixty (60) days beyond the state law time frame by operation of 11 U.S.C. § 108(b) upon the filing of a petition[5]. *Id.* Concurring with the proposition in *In re Sims* that Congress intended to establish a "bright line" point of termination for a debtor's right to cure, the court reviewed the language of § 1322(c)(1) to determine when that time occurred. *Id.* Finding an ambiguity with the term "sold at a foreclosure sale", the court then reviewed the legislative history of the subsection, its interpretive case law, and New Jersey law. *Id.* at 618–21. In its analysis, the court found that the legislative history confirms that the term sale is construed as the time the foreclosure transaction becomes final. *Id.* at 619. Under New Jersey law, the court found that a foreclosure transaction closes at the time a sheriff's deed

is delivered to the successful bidder. *Id.* at 621.

### C. *Statutory Construction*

█ This court concurs with *Ross'* analysis on several levels. First, the best construction of the subsection results in an extension of a debtor's cure rights to the delivery of the sheriff's deed under the legislative history of § 1322(c)(1). As stated above, it is well settled that the modification of the term "foreclosure sale" by "conducted in accordance with applicable nonbankruptcy law" in the text has created an ambiguity with the meaning of the word "sold" in the preceding paragraph of § 1322(c)(1). *Id.* at 618; *In re Simmons*, 202 B.R. at 200 (citing *U.S. v. Gibbens*, 25 F.3d 28, 34 (1st Cir.1994))(a statute is ambiguous if it can reasonably be read in more than one way). As such, the court is required to consider available legislative history, if any, and case law which existed at the time of the statute. *United States v. Ron Pair*, 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989).

The *Simmons* line of cases rely on the floor statement of Senator Grassley "... [t]here may be several months between court order and the foreclosure sale. [§ 1322(c)(1)] will preempt conflicting State laws; and permit homeowners to present a plan to pay off their mortgage debt until the foreclosure sale actually occurs[6]." *In re*

---

**4.** Although *Matter of Roach* was legislatively overruled by the enactment of § 1322(c)(1), *See* p. 460 *supra*, this court concurs with *Ross* in that *Roach's* analysis which draws a distinction between curing a default under the Bankruptcy Code and evaluating a debtor's property interests at the time of filing, including redemption opportunities, survives. *Id.* at n. 6.; *In re Mocco*, 176 B.R. 335, 344 (Bankr.D.N.J.1995).

**5.** According to 11 U.S.C. § 108(b):

Except as provided in subsection (a) of this section, if applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor or an individual protected under section 1201 or 1301 of this title may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act, and such period has not expired before the date of the filing of the petition, the trustee may only file, cure, or perform, as the case may be, before the later of—

(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case or;
(2) 60 days after the order for relief.

**6.** The complete statement as cited in *Simmons* is as follows:

Mr. President, I am pleased to support H.R. 5116. This bill represents the collective wisdom of the Senate and the House concerning needed bankruptcy reforms. As an original sponsor of the Senate-passed bill, S. 540, I would have its enactment. Nonetheless, compromise is the key to enact just about anything, I can support this compromise bill as a good effort to improve our Nation's bankruptcy laws, Indeed, several of the provisions of the House bill were an improvement on the Senate language.... Title III of the bill will assist homeowners. Some homeowners attempt to prevent their homes from being foreclosed upon, even though a bankruptcy court has ordered a foreclosure sale. There may be sev-

*Simmons,* 202 B.R. at 202 (citing 140 CONG. REC. § 14462 (daily ed. October 6, 1994)). The legislative history of the House version of the bill relating to the Senator's statement supports an alternative conclusion. House Report 103–835 states in pertinent part that:

> This section of the bill safeguards a debtor's rights in a chapter 13 case by allowing the debtor to cure home mortgage defaults *at least through the completion of a fore-closures sale* under applicable nonbankruptcy law. However, if the *State provides the debtor more extensive "cure" rights (through, for example, some later redemption period),* the debtor would continue to enjoy such rights in bankruptcy.

H.R.REP. 103–835, 103rd Cong., 2d Sess. 52 (October 4, 1994); 140 CONG. REC. 10752–01, 10769 (October 4, 1994); U.S.Code Cong. & Admin. News 1994, pp. 3340, 3361 (emphasis added). When this commentary is read with Senator Grassley's statement, it is apparent that Congress intended that a debtor's rights would continue to the time of a sale and that if certain states would provide debtors "more extensive cure rights" a debtor should benefit[7]. This court agrees with *Ross* that if Congress intended for a debtor's right to cure to terminate at the sheriff's sale, it could have stated as such. *Matter of Ross,* 191 B.R. at 618. Congress placed the date of termination at the point when the sale is final under "applicable state law", knowing that the applicable date would necessarily vary from state to state. *In re Rambo,* 199 B.R. 747, 750 (Bankr.W.D.Okla.

1996). Congress' intent was not to reduce the cure rights previously possessed by debtors, but to extend those rights for those debtors in whose jurisdictions they were unduly restrictive. *Id.* Accordingly, the most consistent interpretation of the legislative history of § 1322(c)(1) is to allow a debtor to cure a mortgage up to the time a sale becomes final.

### D. *New Jersey Law*

■ This court also concurs with *Ross'* examination of New Jersey law holding that a judicial foreclosure sale is final on the date the deed on the property is conveyed by the sheriff. *Matter of Ross,* 191 B.R. at 618. To foreclose under a mortgage under New Jersey law, N.J.S.A. 2A:50–2 requires a mortgagee to file an action to foreclose, obtain a judgment of foreclosure and a writ of execution directing the sale of the mortgaged property pursuant to N.J.S.A. 2A:50–36, and sell the property through a sheriff or other authorized person to the highest bidder, N.J.S.A. 2A:50–37. *Id.* Under N.J. Court R. 4:65–5[8], the sheriff is further directed to "deliver a good and sufficient conveyance" unless an objection is served upon him within ten (10) days after the sale or at any time before the deed is delivered. *Id.* The mortgagor is then permitted to redeem within the ten (10) day statutory objection period and until an order confirming the sale if objections are filed. *Id.* (citing *Hardyston Nat'l. Bank v. Tartamella,* 56 N.J. 508, 513, 267

---

eral months between the court order and the foreclosure sale. Section 301 will preempt conflicting State laws, and permit homeowners to present a plan to payoff their mortgage debt until the foreclosure sale actually occurs."
*In re Simmons,* 202 B.R. at 202.

**7.** Further support for this conclusion can be found in commentary of treatises:

> [I]n some states, a sale may not be deemed completed until the court has entered an order confirming the sale, or until a sheriff has conveyed the property, or until a debtor no longer may redeem the property. It may well be significant that Congress did not say that the debtor may cure 'until the sale,' or 'until the date of the foreclosure sale,' indicating that the completion of the sale might be a later date than the date of the auction."

5 LAWRENCE P. KING, Collier on Bankruptcy, ¶ 1322.14A at p. 1322–50 (15th ed.1995).

**8.** N.J. Court R. 4:65–5 states as follows:

> A sheriff is authorized or ordered to sell real estate shall deliver a good and sufficient conveyance in pursuance of the sale unless a motion for the hearing of an objection to the sale is served within 10 days after the sale or at any time thereafter before the delivery of the conveyance. Notice of the motion shall be given to all persons in interest, and the motion shall be made returnable not later than 20 days after the sale, unless the court otherwise orders. On the motion, the court may summarily dispose of the objection; and if it approves The sale and is satisfied that the real estate was sold at its highest and best price at the time of the sale, it may confirm the sale as valid and effectual and direct the sheriff to deliver a conveyance as aforesaid. (September 1, 1994).

A.2d 495, 498 (1970)). The crux of the instant issue lies in the statutory interpretation of the finality of a sale under New Jersey law.

The genesis of N.J. Court R. 4:65–5 lies in R.S. 2:65–12, the statute which controlled confirmation of a foreclosure sale prior to 1948. *Hardyston Nat. Bank v. Tartamella*, 56 N.J. at 510, 267 A.2d at 496. The statute required a sheriff to report a sale within five (5) days to move the court to approve and confirm the sale as valid, provided the court was satisfied that the highest price obtainable by cash was realized by affidavits or certifications. *Crane v. Bielski*, 27 N.J.Super. 448, 456, 99 A.2d 526, 530 (App.Div. 1953). If confirmed, the court directed the sheriff to execute and deliver a deed of conveyance. *Id.* Then, by Chancery Rule 218, the order of confirmation could not be entered until the expiration of ten (10) days. *Id.* On September 15, 1948, R.S. 2:65–12 [9] was amended to eliminate the motion to confirm and the order of confirmation. N.J.S. 2A:50–19, N.J.S.A.; *Id.* The Chancery Court Rule was also amended to authorize the sheriff to transfer the foreclosure deed to the purchaser within ten (10) days, provided no objections were filed with the court. *Id.* (citing Rule 3:77–5 (now N.J. Court R. 4:65–5)). Accordingly, the 1948 revision made the judicial sale the final event but gave the debtor or any one with an interest, an objection period to challenge the confirmation of a sale.

Pertinent to the instant case, the 1948 amendment created a question as to whether or not a mortgagor had an absolute right to redeem before a confirmation of a foreclosure sale. In *Ghee v. Davenport*, the court examined the redemption issue in the pre-amendment context. *Ghee v. Davenport*, 2 N.J.Super. 532, 533, 64 A.2d 902, 903 (Ch.Div.), *aff'd* 4 N.J.Super. 518, 68 A.2d 284 (App.Div.1949). The court found that no true sale existed until it was judicially determined that the sale was "valid and effectual". *Id.* The court

reasoned that the mortgagors' equity of redemption was not absolutely foreclosed after a sale but merely suspended, only to be terminated if the purchaser complied with the conditions of sale. *Id.* at 535, 64 A.2d at 904 (citing *Wootton v. Pollock*, 119 N.J.Eq. 128, 132, 181 A. 172 (E & A 1935)); *Vanderbilt v. Brunton Piano Co.*, 111 N.J.L. 596, 601, 169 A. 177 (E & A 1933); *Federal Title & Mortgage Guaranty Co. v. Lowenstein*, 113 N.J.Eq. 200, 166 A. 538 (Ch.Div.1933). Thus, the mortgagors had the right to redeem until the sheriff's sale was confirmed by the court. *Id.*

The Appellate Division disagreed with *Ghee v. Davenport in Crane v. Bielski*, a post-amendment case which held that a judicial sale immediately terminated the equity of redemption so that the mortgagor could thereafter redeem only for adequate cause. *Crane v. Bielski*, 27 N.J.Super. at 458–59, 99 A.2d at 531. In denying the mortgagor's request to redeem the property within ten (10) days of the sale and before conveyance of the deed, the court reasoned that since confirmation of the sale was no longer required by the amended rules of Court, the rights of the parties were fixed at the time of the sale unless the court sets aside the sale following a motion showing sufficient cause within the objection period. *Id.*

The Supreme Court of New Jersey examined the conflicting dates of redemption in *Hardyston Nat'l Bank v. Tartamella* [10]. *Hardyston Nat'l Bank v. Tartamella*, 56 N.J. at 508, 267 A.2d at 495. In *Hardyston*, the Court specifically rejected the holding in *Crane* and resolved the conflict in favor of the reasoning in *Ghee v. Davenport*. *Id.* at 511, 267 A.2d at 496. The Court found that *Crane v. Bielski* "misconceived the impact of [the court's ] rules ... [as] the motion to confirm and the order of confirmation were eliminated not to change the rights of the parties as they ... existed, but only to eliminate the paperwork of a formal motion and

---

9. L.1948, c. 378, as amended, L.1949, c. 112 (R.S. 2:65—12, N.J.S.A.).

10. At the time of the *Hardyston* decision, New Jersey did not have a statutorily-created right of redemption. *Carteret Sav. and Loan Ass'n, F.A.*

*v. Davis*, 105 N.J. 344, 348, 521 A.2d 831 (1987). The equity of redemption merely carried a right to forestall the foreclosure. Once the foreclosure and the sale took place, the mortgagor had no further right or interest in the property. *Id.*

order ... which had become routine and of no practical value." *Id.* at 510, 267 A.2d at 496. Thus, the force of the statute was to enhance the administration of a foreclosure action, not to limit the rights of the parties.

*Hardyston* also noted that the recognition of the right of redemption after a sale encourages bidding because a purchaser would know that a bid that does not approximate value will stimulate the debtor to make a "last-ditch" effort to regain the property at the deflated price. *Id.* at 513–14, 267 A.2d at 497. While recognizing that the situation would be rare in which a foreclosed mortgagor could redeem after a sale, the *Hardyston* court reasoned that the "historically favored status" of the right of redemption in the mortgagor argued in favor of an extension through the ten (10) day period. *Id.*

In *Carteret Savings & Loan Ass'n, F.A. v. Davis*, 105 N.J. 344, 521 A.2d 831 (1987), the Supreme Court reviewed the progeny of *Ghee v. Davenport* in the context of a purchaser's challenge of a sheriff's acceptance of a redemption of a mortgage to a third party. Although the court held that an assignee of a second mortgage does not acquire a right to redeem property after a foreclosure sale, it reaffirmed the *Hardyston* decision in *dicta* that a borrower maintains an opportunity to redeem property through the ten (10) day objection periods [11]. *Id.* at 353, 521 A.2d 831. Thus, the reflection of the New Jersey Supreme Court appears to be that a judicial sale is final when the sheriff conveys the deed, at the expiration of the ten (10) day objection period. *Matter of Ross*, 191 B.R. at 620.

This court also agrees with *Ross* that the language in *Porreca v. LaFerriere*, 225 N.J.Super. 590, 591, 543 A.2d 102 (App.Div. 1988), is not inconsistent with its holding that the property is deemed sold upon conveyance of the deed. *Id.*, 191 B.R. at 621. The *Porreca* court analyzed a decision which rejects the argument of a successful purchaser that a sheriff who conducts a foreclosure sale and executes a deed is responsible to pay the realty transfer tax required under N.J.S.A.

46:15–7. *Porreca v. LaFerriere*, 225 N.J.Super. at 595, 543 A.2d at 104. The court affirmed the lower court's holding that the presiding sheriff was not a "grantor" within the meaning of the statute imposing the fee obligation. *Id.* at 595, 543 A.2d 102. The sheriff merely acted as a court agent, performing a ministerial function in the conveyance of a deed. *Id.*

*Porreca 's* finding that the sheriff's duties are merely ministerial in nature only lends further support for the argument that the date of the sheriff's sale is not the determinative event, but instead only a tentative agreement to purchase the property. First, a successful purchaser in New Jersey is required only to deliver a deposit of twenty-percent (20%) of the bid price at the conclusion of a foreclosure sale, with the balance to be paid in cash or certified funds prior to deed delivery. *See*, N.J.S.A. 2A:50–64. Further, it is well settled that legal title does not vest in the purchaser until the transfer of the deed. *Union County Savings Bank v. Johnson*, 210 N.J.Super. 589, 594, 510 A.2d 288, 291 (Ch.Div.1986). At the auction, the purchaser only obtains equitable title in the property, subject to defeasance. *Union Building & Loan Ass'n v. Childrey, et al.*, 97 N.J.Eq. 20, 24, 2 N.J.Misc. 567, 571, 127 A. 253 (Ch.1924); *Development Building & Loan Assn. of Camden v. Nurock et ux.*, 10 N.J.Misc. 23, 26, 157 A. 452, 454 (Sup.1931); *Cropper v. Brown*, 76 N.J.Eq. 406, 414–15, 74 A. 987, 991 (Ch.1909). A purchaser may be relieved of a bid by a court before delivery of the sheriff's deed if there are undisclosed encumbrances and substantial title defects, N.J.S.A. 2A:61–16, or the debtor objects to the sale during the ten (10)day period following the auction and prior to the conveyance of the sheriff's deed. *Matter of Ross*, 191 B.R. at 621 (citing N.J. Court R. 4:65–5). Thus, the actual foreclosure sale is in the form of a bargain among competent parties, dependent upon the completion of the payment of the full purchase price and delivery of the sheriff's deed. *Karel v. Davis*, 122 N.J.Eq. 526, 531, 194 A. 545 (E & A 1937);

---

**11.** Under New Jersey law, a chapter 13 filing does not alone operate as an "objection" to a sale under N.J. Court R. 4:65–5. *Union County*

*Sav. Bank v. Johnson*, 210 N.J.Super. 589, 510 A.2d 288 (Ch.Div.1986).

*Thompson v. Ramsey,* 72 N.J.Eq. 457, 460, 66 A. 588, 589 (Ch.1907). As stated in *Thompson,* citing the language of Lord Mansfield, "the execution and delivery of the deed of the sheriff is the substantial part [of a sale].... In such cases, ... an estate does not pass until all the acts requisite ... are completed...." *Id. See also, United States v. Capobianco,* 836 F.2d 808, 810–11 (3d Cir.1987); *Blatchford and Others v. Conover,* 40 N.J.Eq. 205, 13 Stewart 205, 1 A. 16, 17 (E & A 1885).

The courts in *Ziyambe* and *Simmons* also hold that fixing the point of termination at the date of the sheriff's sale or auction would create a more uniform rule for deciding when the debtors' right to cure has ceased under § 1322(c)(1). This court does not believe that placing the date of termination at the point when the sale becomes *final* would be in contravention of this legislative intent. *Ziyambe* suggests that administrative and staffing considerations of the sheriff of each county make the delivery of a deed capricious in that it cannot be predicted by a debtor, creditor or a successful purchaser. *In re Ziyambe,* 200 B.R. at 798. This court suggests that those same issues plague the scheduling of a foreclosure sale.

First, N.J.S.A. 2A:17–36 authorizes a sheriff to make two (2) adjournments of any sale "to any time, not exceeding 14 calendar days of each adjournment." This section also allows a court of competent jurisdiction to make further adjournments for cause. *Id.* Such an adjournment is within a sheriff's discretion, *Morris v. Woodward,* 25 N.J.Eq. 32, 10 G.E. Green 32 (Ch.1874), and a proclamation of an adjourned date without further advertising is deemed as sufficient notice, *Allen v. Cole,* 9 N.J.Eq. 286, 59 Am.Dec. 416 (Ch.1853). Thus, the sale date is readily susceptible to change without a published date. This is the precise reason *Ziyambe* and *Simmons* are uncomfortable with the language of Rule 4:65–5 as it allows objections to be served within ten (10) days after the sale or at any time *thereafter* before the delivery of the conveyance. N.J. Court R. 4:65–5. While these courts stress that there is less certainty in the ten (10) day objection period following a sale, this court views the completion of the *entire* sale process culminated by the actual delivery of the sheriff's deed as the more definitive point of termination because the sale of the property becomes *final* under state law. *Matter of Ross,* 191 B.R. at 621.

### CONCLUSION

Based on the foregoing, this court concludes that a New Jersey foreclosure sale is complete when the sheriff delivers the deed to the successful purchaser. Therefore, a chapter 13 debtor may cure a default and reinstate a residential mortgage following the entry of a foreclosure judgment and the conduct of a sheriff's sale, until the actual delivery of a sheriff's deed to the successful purchaser. Ford's motion for reconsideration is denied. Counsel for the debtors shall submit an order consistent with this opinion within ten days.